STATE OF NEBRASKA, APPELLEE, V. RONALD E. WILLIAMS, APPELLANT.

453 N.W.2d 399

Filed March 30, 1990.   No. 89-245.

Gregory M. Schatz, of Stave, Coffey, Swenson, Jansen, & Schatz, P.C., for appellant.

Robert M. Spire, Attorney General, and Douglas J. Peterson for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

In 1986 the defendant, Ronald E. Williams, was convicted by a jury of second degree murder and using a firearm to commit a felony. He was sentenced to 20 years on the murder conviction and to 3 years for the use of a firearm, the sentences to run consecutively. The judgment was affirmed by this court in *State v. Williams*, 226 Neb. 647, 413 N.W.2d 907 (1987).

On July 12, 1988, the defendant filed his pro se motion to vacate and set aside the judgment pursuant to Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1989). At the evidential hearing on January 19, 1989, the defendant presented the record of his trial and his deposition, which contained 18 allegations of ineffective assistance of his trial counsel, the chief deputy Douglas County public defender.

The standard of review for a claim of ineffective assistance of counsel is set forth in *State v. Jones*, 231 Neb. 110, 112-13, 435 N.W.2d 650, 652 (1989):

> "A defendant seeking postconviction relief has the burden of establishing a basis for such relief, and the findings of the district court will not be disturbed on

appeal unless clearly erroneous. [Citations omitted.] ' "When the defendant in a postconviction motion alleges a violation of his constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether the attorney, in representing the accused, performed at least as well as a lawyer with ordinary training and skill in the criminal law in the area. Further, the defendant must make a showing of how the defendant was prejudiced in the defense of his case as a result of his attorney's actions or inactions." ' . . .

". . . '[T]o sustain a claim of ineffective assistance of counsel as a violation of the sixth amendment to the U.S. Constitution and thereby obtain reversal of a defendant's conviction, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense, that is, a demonstration of reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.'

"A convicted defendant seeking a reversal of the conviction or sentence for the reason that counsel's assistance was deficient must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . ."

See, also, *State v. Gagliano*, 231 Neb. 911, 438 N.W.2d 783 (1989).

Following the evidential hearing in this case, the trial court determined that as to nine of the allegations, there was clearly no issue of fact, and that they had no merit. The allegations and the court's findings were as follows:

1. That his counsel failed to discuss his right to file plea in abatement following his preliminary hearing. Regardless of whether counsel discussed that right, in fact, his plea of not guilty at arraignment was tendered subject to a plea in abatement which in fact was subsequently filed and was considered and overruled.

2. That counsel failed to move the court to suppress his statement and failed to advise him that he had a right to have his statement suppressed. Regardless of whether he was so advised, in fact, a motion to suppress his statement was filed, was heard and was overruled.

3. That counsel failed to move the court for suppression of physical evidence offered by the State at trial. The only physical evidence offered by the State at trial was a copy of the rights advisory form, the tape recording of defendant's statement and some photographs and charts. The rights advisory form and the tape of defendant's statement were addressed in the motion to suppress his statment [sic]. The photographs and charts would not form the subject matter of a motion to suppress such evidence.

4. That counsel advised defendant against accepting a plea bargain offer by the State. Defendant's testimony and that of [defense counsel] are not in dispute in that the only plea bargain offered by the State was an agreement to change Murder I to Murder II and to drop Count II, (use of a firearm in commission of a felony), in exchange for a guilty plea to Murder II. Upon being advised by [defense counsel] that defendant would have to admit the intentional act of killing the victim, defendant refused the offer. He would have accepted an offer to plead guilty to manslaughter, but such offer was never made by the State.

5. That counsel failed to inquire of the pathologist who performed the autopsy whether he could determine by the path of the bullet whether the victim's arms were raised or lowered at the time of the shooting. [Defense counsel] did discuss this with another pathologist and concluded that it could not be so determined.

6. That counsel failed to move the court for mistrial because certain jurors were sleeping during the course of the trial. Defendant complained of one juror in particular, but did not indicate during what portion or portions of the trial he was sleeping. Nor has he made any showing that the juror was actually sleeping rather than having his eyes shut, a common practice by jurors.

7. Counsel failed to investigate why certain jurors were

openly crying when the jury rendered its verdict. In fact, two female juiors [sic] did visibly cry when the verdict was rendered. The verdict ended a serious responsibility for the jurors. Although the evidence more than amply supported the jury's verdict, from the evidence the shooting could be well characterized as a tragedy that should never have occurred. As [defense counsel] pointed out, the evidence of defendant's background and his presentation as a witness could well have characterized him as a likeable person. [Defense counsel] polled all jurors. Under the circumstances, the reaction of the two jurors was a foreseeable human emotional reaction reflecting the finality of the discharge of their function, and nothing more.

8. That counsel failed to devote adequate time to his case because of counsel's heavy caseload at the time of defendant's trial. Defendant's testimony showed nothing more than that [defense counsel] had five to ten other cases he was handling including at least five murder cases. [Defense counsel] testified that defendant never complained to him about this and defendant does not contend that he did so. Defendant stated no specifics and otherwise makes no showing as to how counsel failed to devote adequate time to his case.

9. That counsel failed to discuss a trial strategy with him. Defendant does not state any trial strategy he claims should have been adopted. [Defense counsel] testified that he knew defendant's father, that he was in contact with defendant a day after he turned himself in. The trial strategy of self defense was obvious from the beginning, and it is incredible to think that defendant was not aware of it.

As to the remaining 10 allegations, the trial court found that the defendant was not sufficiently prejudiced by any of them even if they had any merit.

The defendant has appealed and contends the trial court erred in finding that he had not been denied effective assistance of counsel and in denying his motion for postconviction relief.

The facts relating to the original conviction are set forth in

detail in *State v. Williams*, 226 Neb. 647, 413 N.W.2d 907 (1987).

Briefly stated, the evidence showed that the defendant shot and killed Eric Holmes in the early morning hours of April 13, 1986, during a confrontation on a residential street in Omaha, Nebraska.

The defendant testified that he shot the victim in self-defense when it appeared the victim reached with his right hand into his right pocket, which appeared to have a bulge. The victim's sister testified that the victim was left-handed.

Two eyewitnesses, Steven and Judy Gregory, testified that at the time he was shot the victim's arms were extended in the air and that before the defendant shot him, the victim stated, "I don't have anything."

Although there was some evidence that the victim owned a gun, there was no clear evidence that the victim was armed at the time he was shot.

With regard to the remainder of the allegations in the defendant's motion, the trial court made the following findings:

A. That counsel failed to interview witnesses Jack Hudson and Antonio Alexander. [Defense counsel] testified that he did interview Hudson and may have interviewed Alexander. Both parties testified as witnesses for the State. [Defense counsel] had reviewed their statements previously made and contained in the police reports. Both were thoroughly cross-examined at trial. Defendant says that [defense counsel] did not cross-examine Alexander about things he told him to ask Alexander, but defendant does not specify what things he told him to ask about.

B. That counsel failed to cross-examine witnesses Steven Gregory and Judy Gregory about their wearing glasses at the time of the shooting. The allegation is accurate. Defendant testified that said witnesses wore glasses when they testified at trial. These witnesses testified that they observed the actual shooting and were carefully cross-examined by [defense counsel] regarding the matter and their ability to see what they claimed they

saw. The Gregorys had just returned from an evening out. Mr. Gregory was driving their car and had just gotten out when they heard the commotion. Not only has defendant made no showing that would suggest that the Gregorys were not wearing their glasses at that time, but the evidence just stated particularly as to Mr. Gregory, would suggest the contrary.

C. That counsel failed to cross-examine witnesses Steven Gregory and Judy Gregory regarding the lighting conditions at the scene of the shooting. [Defense counsel] did cross-examine both witnesses about the lighting conditions, emphasizing that the lighting conditions were darker than the State's exhibit photographs suggested.

D. That counsel failed to pursue the Omaha Police Department's failure to search the immediate area where defendant's [sic] body was located. After the shooting, the victim ran from the scene to a residence not far away where he was found dead sitting on the couch. One witness testified that he saw no weapon around the victim or the residence. The police officer testified on cross-examination that he saw something near the right hand of the victim on the floor but could not recall what it was.

E. That counsel failed to attempt to verify that the victim was right handed or to adequately cross-examine the victim's sister on that issue. The defendant testified that at the time of the shooting he thought the victim was reaching for something, such as, a weapon with his right hand. The victim's sister as a State's rebuttal witness testified that the victim was left handed. [Defense counsel] did not cross-examine this witness. He did not feel that it was significant and that it was "a non-issue".

F. That counsel failed to discuss photograph exhibits with the defendant as they were marked by witnesses during their testimony. The allegation is accurate although [defense counsel] did discuss and show photographs to defendant and had him point out pertinent areas shown on the photographs.

G. That counsel failed to pursue the fact that a

marijuana "joint" appears next to the victim in a photograph of victim's body taken where the body was discovered. This allegation is accurate. [Defense counsel] felt it was "a non-issue".

H. That counsel failed to investigate the ownership of a firearm by the victim prior to trial, including deposing possible witnesses to that fact. One witness did testify that the victim owned a firearm. Defendant admits that he was not aware of any witnesses who could have attested to this claim.

I. That counsel failed to pursue the removal of black jurors from the jury panel for defendant's trial. Defendant says that there were black jurors on the panel, but none were selected on the jury. He identifies only one prospective black juror. He makes no showing as to how many prospective jurors were on the panel, or who exercised any peremptory challenges of any black jurors.

. . . .

This court concludes that it may readily dispose of defendant's ineffectiveness claim on the ground of lack of sufficient prejudice. Among all of the latter set of allegations of ineffectiveness of counsel, only two merit further consideration.

One is the question of whether the victim was right or left handed. Defendant testified at trial that the victim was reaching for something with his right hand. The testimony of the victim's sister in rebuttal that the victim was left handed would tend to impeach defendant's testimony on this point and would relate overall to the issue of self-defense. However, there was no reason for [defense counsel] to anticipate such rebuttal evidence, and it would be a reasonable trial tactic not to cross-examine the witness about it, inasmuch as it could achieve nothing other than to unduly focus on a matter that could ultimately be argued as insignificant or even ignored entirely.

The other is the failure to cross-examine the Gregorys about their wearing glasses when they saw the shootings. Such examination would have been appropriate.

Defendant, however, makes no showing whatsoever that they were not wearing glasses then. In fact, considering that Steven Gregory had just driven their car in the driveway and was getting out when they heard the commotion, it is very unlikely that he would have testified that he was not wearing his glasses at that time.

The court may and does consider whether any errors would have a pervasive effect on the inferences to be drawn from the evidence. It may also consider whether they would alter the entire evidentiary picture or whether they would have had only an isolated, trivial effect. The court may also consider whether the verdict is only weakly supported by the record and therefore is more likely to have been affected by errors as opposed to one of overwhelming record support. The court must ask if the defendant has met the burden of showing that the decision reached would reasonably likely to have been in favor of defendant absent any errors made. *Strickland v. Washington,* [466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)].

Without reviewing all of the salient evidence, there is no question that the verdict against the defendant was one of "overwhelming record support." The evidence would have supported a verdict of murder in the first degree as well as the verdict actually rendered. Taking all of the allegations together, the court concludes that they would not have had a pervasive effect on the inferences to be drawn from the evidence and would not have altered the entire evidentiary picture. The court further concludes that such allegations, even assuming their accuracy, were not such as to deprive the defendant of a fair trial or to make the result unreliable.

The record fully sustains the findings of the trial court.

In this court, the defendant has set forth five reasons why he claims he was denied effective assistance of counsel: (1) His counsel failed to cross-examine the Gregorys as to whether they were wearing glasses at the time of the shooting; (2) his counsel did not pursue the failure of the police to search the immediate area where the victim's body was located; (3) his counsel failed

to question the pathologist who performed the autopsy as to whether he could determine by the path of the bullet through the victim's chest the position of the victim's arms at the time of the shooting; (4) his counsel failed to verify the victim's sister's testimony that the victim was left-handed; and (5) his counsel failed to investigate the victim's ownership of a firearm prior to the trial and to pursue at trial the possibility of the victim's ownership of a firearm.

Although the defendant's attorney did not cross-examine the Gregorys as to whether they were wearing their glasses the night of the shooting, he did question them about their ability to see and the lighting at the scene. The defendant's counsel testified that he thought that was the best method to attempt to impeach the Gregorys. He did not ask questions about their glasses because he did not think it was significant.

During the trial, two police officers involved in the investigation testified that they did not see or find a weapon during the search of the victim's apartment. The defendant's counsel testified that there was nothing that showed the victim had a weapon. He did not pursue whether there was one in the victim's apartment because he felt unless there was a weapon on the victim or next to him, it was not pertinent.

The defendant's counsel did not question the pathologist who performed the autopsy as to whether he could determine by the path of the bullet through the victim's chest whether the victim's arms were raised or lowered at the time of the shooting. The defendant's counsel testified that prior to the trial he had talked to another pathologist about this matter and that doctor informed him that the position of the victim's arms could not be determined from the path of the bullet.

The victim's sister testified as a rebuttal witness for the State, after the defendant had testified that he shot the victim in self-defense when it appeared that the victim reached into his right pocket with his right hand. The victim's sister testified that the victim was left-handed and rarely used his right hand for any activity. The defendant's attorney did not cross-examine her because he thought it was not a matter of significance.

The evidence at trial against the defendant was overwhelming. His attorney was an experienced trial lawyer

who performed as a lawyer possessing ordinary training and skill in criminal law in the area should have done. His decisions regarding cross-examination of the various witnesses in the situations described above were part of a trial strategy that proved unsuccessful. That this " 'strategy proved unsuccessful [i.e., that the defendant was convicted] does not sustain a finding of ineffectiveness of counsel.' " *State v. Ellefson*, 231 Neb. 120, 125, 435 N.W.2d 653, 657 (1989) (quoting *State v. Fries*, 224 Neb. 482, 398 N.W.2d 702 (1987)). Furthermore, the defendant has failed to establish how he was prejudiced by his attorney's decisions.

Regarding the defendant's allegation that his counsel failed to investigate the victim's ownership of a firearm prior to the trial, his counsel testified that he did not pursue that issue because there was nothing in the evidence to indicate a weapon either immediately nearby or on the person of the victim, and the defendant had no direct knowledge as to whether the victim was carrying a weapon that night or had a reputation for carrying a weapon.

"In any effectiveness of counsel case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." (Syllabus of the court.) *State v. Domingus, ante* p. 267, 450 N.W.2d 668 (1990).

The defendant failed to establish that his counsel's investigating strategy showed a lack of reasonable professional judgment and that his counsel failed to perform at least as well as an attorney with ordinary training and skill in the field of criminal law in the area. Even if counsel's failure to investigate whether the victim owned a gun were error, the defendant did not demonstrate how such error prejudiced the outcome of his trial. See *Domingus, supra*.

The defendant failed to establish any basis for postconviction relief. The judgment of the district court is affirmed.

AFFIRMED.