STATE OF NEBRASKA, APPELLEE, V. CARY N. REHBEIN, APPELLANT.
455 N.W.2d 821

Filed June 1, 1990.    No. 89-731.

Bernard L. McNary for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The district court denied defendant postconviction relief without an evidentiary hearing or appointment of counsel. Defendant, now with benefit of counsel, has appealed to this court.

The defendant assigns as error (1) the finding of the district court that defendant was competent to enter a plea of guilty and that the plea was knowingly, intelligently, and voluntarily made; (2) the failure of the district court to grant defendant an evidentiary hearing on his claims that he was not competent to enter his plea, that he received ineffective assistance of counsel, and that his right to appeal was denied; and (3) the refusal of the district court to appoint counsel for defendant during the

proceedings before the court. We affirm.

One seeking postconviction relief has the burden of establishing the basis for such relief, and the findings of the postconviction court will not be disturbed unless they are clearly wrong. *State v. Joubert, ante* p. 230, 455 N.W.2d 117 (1990); *State v. Williams,* 234 Neb. 890, 453 N.W.2d 399 (1990).

In a postconviction action seeking relief on the basis of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense. *State v. Joubert, supra*; *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

When the defendant in a postconviction motion alleges a violation of his or her constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether the attorney, in representing the accused, performed at least as well as a lawyer with ordinary training and skill in the criminal law in the area. Further, the defendant must make a showing of how the defendant was prejudiced in the defense of his case as a result of his attorney's actions or inactions. See, *State v. Williams, supra*; *State v. Jones,* 231 Neb. 110, 435 N.W.2d 650 (1989).

In order to satisfy the prejudice requirement in the context of a plea, the defendant must show there is a reasonable probability that but for counsel's errors, the defendant would not have pled and would have insisted upon going to trial. *State v. Joubert, supra.*

> "A court is not required to grant an evidential hearing on a motion for postconviction relief which alleges only conclusions of law or fact; nor is an evidential hearing required under the Nebraska Postconviction Act when (1) the motion for postconviction relief does not contain sufficient factual allegations concerning a denial or violation of constitutional rights affecting the judgment against the movant, or (2) notwithstanding proper pleadings of facts in a motion for postconviction relief, the files and records in the movant's case do not show a denial or violation of the movant's constitutional rights causing the judgment against the movant to be void or

voidable."
*State v. Reeves*, 234 Neb. 711, 755-56, 453 N.W.2d 359, 386 (1990) (quoting *State v. Von Dorn*, 234 Neb. 93, 449 N.W.2d 530 (1989)).

The failure of the district court to provide court-appointed counsel in postconviction proceedings is not error in the absence of an abuse of discretion. *State v. Wiley*, 228 Neb. 608, 423 N.W.2d 477 (1988).

On or about September 5, 1981, defendant, then 27 years of age, broke into Carl R. Fisher's apartment in Omaha with the intention of robbing him and ended up striking Fisher with a hatchet, which caused his death. Defendant was arrested and charged with killing Fisher "during the attempt to perpetrate a robbery, or purposely and with deliberate and premeditated malice . . . ."

Pursuant to a plea bargain, defendant changed his plea to guilty, in exchange for which the State amended the information by striking from it the alternative premeditation charge.

The record of defendant's plea acceptance hearing on May 5 and 6, 1983, shows complete and meticulous compliance with the requirements set forth in *State v. Walker, ante* p. 85, 453 N.W.2d 482 (1990) (applying *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986)).

The record of the plea proceedings covers 32 pages of the bill of exceptions. The trial court carefully and fully explained to the defendant his constitutional rights, including the right to a jury trial, the right to confront witnesses, the presumption of innocence, the privilege against self-incrimination, and the range of penalties. The court inquired of the defendant on at least nine different occasions whether there had been any threat, intimidation, or undue pressure used against him and whether the plea he entered was freely and voluntarily given. All of the defendant's responses supported the district court's finding that the guilty plea was freely and voluntarily entered.

A sufficient factual basis for accepting the plea is found in the record, including a rather detailed admission by the defendant himself as to what happened on the night of the murder.

When asked by the court if he was under the influence of any alcohol, drugs, narcotics, or other pills, defendant responded that he was taking the medication Mellaril. At that point, defendant told the court that his counsel would be better able than he to provide further information about that drug. Counsel stated that defendant was taking 800 milligrams of that drug daily. Counsel further stated that he had spoken with Dr. Gutnik, defendant's treating psychiatrist, about whether the drug would affect defendant's ability to enter a plea and was told that defendant would understand and comprehend what was going on; that he would know the nature and quality of the proceedings, as well as the consequences of entering a plea; and that he could tender a plea knowingly and intelligently.

The sentencing hearing was held on May 23, 1983. This was also a rather exhaustive hearing, which covered some 40 pages of the bill of exceptions. There were various medical reports introduced at that hearing, covering treatment and diagnoses from periods before the commission of the crime. In addition, Dr. Gutnik testified, as did the defendant's 62-year-old father. Dr. Gutnik stated that in his opinion the defendant was capable of entering a voluntary and intelligent plea of guilty on May 5 and 6, 1983, to the crime of felony murder. He also testified that the defendant knew the difference between right and wrong and was in good touch with reality. He further stated that he was not able to say that the defendant was insane on the date of the crime.

Upon consideration of the record made at the sentencing hearing, the trial judge made exhaustive findings as provided for in Neb. Rev. Stat. § 29-2522 (Reissue 1989), concluded that a sentence of death would not be appropriate, and sentenced the defendant to life imprisonment.

Defendant's petition for postconviction relief is a rambling 16-page document containing numerous statements of alleged facts, inferences, and conclusions of law. The district court denied an evidentiary hearing. It also refused to appoint counsel, but announced that counsel would be appointed should the defendant elect to appeal. The court made extensive findings which denied defendant any relief. Defendant elected to appeal and is now represented by counsel, although the

record does not disclose whether such counsel is appointed or retained.

Defendant's first assignment of error relates to defendant's claim of his lack of competency to enter a plea and the claimed involuntary nature of the plea.

As to the first contention, defendant relates the fact that he was admittedly under daily medication of 800 milligrams of Mellaril and points to the fact that Dr. Gutnik testified at the sentencing hearing that 800 milligrams is a very high dosage, sufficient to "knock the Fifth Army out." However, Dr. Gutnik went on to testify that

> if someone who does not need it takes it, it basically will knock them out; they will be unconscious in doses of anywhere from 50 to 75 milligrams a day. When someone needs it for its antipsychotic effects, rather than knocking the individual out it allows them to think more clearly and be more aware of the difference between fantasy and reality.

As previously related, Dr. Gutnik gave as his opinion that defendant was perfectly competent to enter a plea at the critical time. In addition, in the dialogue between the court and the defendant, the defendant successfully answered questions relating to time and place and the identity of the first and the then present President of the United States, and successfully answered other questions demonstrating defendant's competency.

In any event, the allegations made by defendant in his petition relating to this subject disclose no facts which would require a hearing on that subject. He alleged that counsel failed to show to the court that he was on 800 milligrams of tranquilizer per day. He related that Dr. Gutnik and others had the knowledge to enlighten the court that defendant was not able to understand the nature of the proceedings because of his medication. As demonstrated by the portions of the record previously referred to, this is absolutely not true.

Defendant further alleged that he was kept in isolation in the Douglas County jail, where he was mistreated, and that defense counsel "had defendant enter a plea promising him that defendant would get out of the problems of the isolation cells

that the Jail was putting him in." In other words, defendant alleged that his plea was not free and voluntary because of threats or promises. Again, the record made at the time of the plea is directly contrary to those assertions.

The proceedings at which the plea was taken were commenced and later interrupted and adjourned until the next day to give the defendant an opportunity to discuss certain matters with his counsel. Upon resuming the proceedings, the court inquired:

Q. . . . All right. Mr. Rehbein, has anybody connected with law enforcement or anyone else made any threat, direct or indirect, or used any force or held out any promises or inducements to you to get you to waive these rights that we discussed yesterday; that is, your right to trial by jury, your right to be confronted by the witnesses against you, your right to subpoena witnesses, your right to remain silent, and your right not to incriminate yourself?

A. No.

. . . .

THE COURT [addressed to defense counsel]: And do you believe that Mr. Rehbein is waiving his rights freely, voluntarily, knowingly and intelligently?

MR. CORRIGAN: I do, Your Honor.

The interrogation by the court continued:

Q. Are you satisfied with the job that Mr. Corrigan has done for you?

A. Yeah.

Q. Do you feel that he's competent; that is, that he knows what he's doing?

A. Yeah.

Q. Do you feel you've had enough time to discuss the case with Mr. Corrigan?

A. Yes.

The court continued to explain the consequences of a guilty plea to the defendant. The court then explained how at the sentencing hearing he would weigh the aggravating and mitigating circumstances and impose a sentence which might be death or life imprisonment. The court then continued:

Q. . . . Now, Mr. Rehbein, has anyone connected with law enforcement or anyone else made any threat, direct or indirect, or used any force or held out any promises or inducements to you other than the plea negotiations which have been mentioned to get you to plead guilty to the crime of felony murder as set out in the Information?

MR. CORRIGAN: Well, no one's made any promises to get you to plead guilty, have they?

THE DEFENDANT: No.

Defense counsel then explained to the court that the defendant had felt that there were promises made to him to get a statement that was taken by the police on October 18, 1982, and that was the reason for the overnight continuance that had been granted. The defendant then, by question and answer, stated that he concluded to waive any question as to the statement and realized that by pleading guilty he was in fact waiving any later attack on that statement.

Defense counsel asked the following question:

[Q.] Okay. But no one has promised you anything with regard to get you to plead today, have they?

THE DEFENDANT: No.

Q. (By the Court) Let me say it again to you. Has anyone connected with law enforcement or anyone else made any threat, direct or indirect, or used any force or held out any promises or inducements to you to get you to plead guilty to felony murder.

A. No.

Q. I'm sorry?

A. No.

Q. Okay. Are you pleading guilty freely and voluntarily to felony murder?

A. Yeah.

A factual basis was then obtained, which included a description in detail by the defendant as to what he had done. The court then asked:

Q. . . . Mr. Rehbein, are you pleading guilty to felony murder solely and only because of the reason that you did, in fact, do the things charged in the Information as they relate to felony murder?

A. Yeah.

Q. Do you still want to plead guilty?

A. Yes, sir.

Even assuming a proper pleading of facts in a motion for postconviction relief, a court is not required to grant an evidential hearing if " 'the files and records in the movant's case do not show a denial or violation of the movant's constitutional rights causing the judgment against the movant to be void or voidable.' " *State v. Reeves*, 234 Neb. 711, 756, 453 N.W.2d 359, 386 (1990) (quoting *State v. Von Dorn*, 234 Neb. 93, 449 N.W.2d 530 (1989)). It would be hard to imagine a case where the trial court more painstakingly covered the issues of noncoercion, voluntariness, and mental competency in the taking of a plea than did the trial judge in this case. To ignore the repeated assertions made and the answers given 6 years ago in favor of a story which has been developed following 5 years behind bars would make a mockery out of our judicial proceedings.

> If the dialogue which is required between the court and the defendant whereat, as here, the court receives an affirmative answer as to whether the defendant understands the specified and full panoply of constitutional rights . . . is to be impugned by a mere recantation made after the doors of the prison clang shut, we are wasting our time and that of the trial judges, making a mockery out of the arraignment process.

*State v. Scholl*, 227 Neb. 572, 580, 419 N.W.2d 137, 142 (1988). The findings made by the trial court in denying relief certainly were not clearly wrong.

Having concluded that defendant's plea was knowingly, intelligently, and voluntarily made while he was competent to do so, we rule out any claim of ineffective assistance of counsel.

We also hasten to point out that a motion for postconviction relief may not be used to obtain review of issues which could have been raised on direct appeal. *State v. Painter*, 229 Neb. 278, 426 N.W.2d 513 (1988). See, also, *State v. El-Tabech*, 234 Neb. 831, 453 N.W.2d 91 (1990). The question of defendant's competence and whether his plea was coerced by the promises of his counsel could have been raised on direct appeal and

cannot be the basis for postconviction relief. See, *State v. Painter, supra*; *State v. Threet*, 231 Neb. 809, 438 N.W.2d 746 (1989).

We are not unmindful of the allegation by defendant that "because of the missleading [sic] information on the defendant the defendant was forced to go to an isolation cell upon his entry of the Diagonistic And evaluation center [sic] at Lincoln, Nebraska for 90 days and this violated the right for direct appeal." As pointed out by the postconviction court, the defendant has not alleged that he wanted to appeal his sentence, and, for that matter, there is nothing in the allegation which sets forth a factual basis from which it could be concluded that his confinement in isolation would prevent him from taking an appeal.

Where the record fails to present a justiciable issue of law and fact to the court in a postconviction action, it is not an abuse of discretion to fail to appoint counsel for an indigent. *State v. Wiley*, 228 Neb. 608, 423 N.W.2d 477 (1988). In any event, the record does not show that the defendant requested counsel until he proceeded with his appeal to this court, and he was represented by an attorney here.

We find no merit to the errors assigned by the defendant, and the judgment of the district court is affirmed.

AFFIRMED.