IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HARMS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

NATHAN V. HARMS, APPELLANT.

Filed March 28, 2023.    No. A-22-393.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Harms appeals from the Douglas County District Court's order denying his motion for postconviction relief without an evidentiary hearing. On appeal, he asserts that the trial court erred in denying his motion without an evidentiary hearing as to his claims that he was denied due process of law and/or his pleas were involuntary due to a lack of competency and that his appellate counsel was ineffective in failing to preserve on direct appeal certain claims of ineffective assistance of trial counsel. For the reasons stated herein, we affirm.

## II. STATEMENT OF FACTS

### 1. PLEA AND SENTENCING

In January 2019, Harms was charged with ten counts of possession of child pornography, all Class IIA felonies. Pursuant to a plea agreement, Harms pled no contest to three counts of

- 1 -

possession of child pornography. In exchange, the State dismissed the remaining counts. Because Harms raises issues of his competency, we quote extensively from the plea hearing and the sentencing hearing.

During the plea hearing, the following colloquy occurred between the court and Harms:

THE COURT: Can I have you state your full name for the record?

MR. HARMS: Nathan Vernon Harms.

THE COURT: And you're the defendant in this case?

MR. HARMS: Yes.

THE COURT: And how old are you?

MR. HARMS: Thirty-six.

THE COURT: And how far did you go in school?

MR. HARMS: Medical school.

THE COURT: Medical school?

MR. HARMS: Yeah.

THE COURT: Did you graduate from medical school?

MR. HARMS: Yeah, I did.

THE COURT: Have you ever been treated for a mental illness or do you now suffer from any type of mental or emotional disability?

MR. HARMS: I'm just treated for depression and anxiety.

THE COURT: And are you currently being treated for that in Douglas County?

MR. HARMS: Yes, I am.

THE COURT: And are you being prescribed medications as a result of these diagnoses?

MR. HARMS: Yes.

THE COURT: What are you taking?

MR. HARMS: Lexapro and --

THE COURT: And that's being monitored and administered by Douglas County medical staff?

MR. HARMS: Yeah, it is.

THE COURT: And you took your appropriate dosage?

MR. HARMS: I mean, I've been without for a month, but they finally got it restarted.

THE COURT: Okay. And are you taking anything else, any alcohol or any other prescriptive or non-prescriptive drugs in [the] last 24 hours?

MR. HARMS: No.

THE COURT: How do you wish to plead to Count 1, possession of child pornography, a Class 2A felony?

MR. HARMS: No contest.

THE COURT: How do you wish to plead to Count 2, possession of child pornography?

MR. HARMS: No contest.

THE COURT: And how do you wish to plead to Count 3, possession of child pornography?

MR. HARMS: No contest.

At the sentencing hearing, in exercising his right to allocution, Harms stated:

Yes. I'm sorry. I'm a bit nervous and I'm trying to get this out. I know you know I had written a lengthy letter to you and I'll try not to belabor or reiterate those same points, but I think it's important that I . . . stand here in front of the Court and . . . admit things I've taken ownership of . . . and [be] accountable to them.

. . . I know I made some horrible mistakes. And . . . this is not a victimless crime. And . . . to think that in viewing those websites I . . . contributed to . . . a system of victimization . . . [has] left me really disgusted and ashamed and guilty and berated with the nature of myself and my actions. Sorry.

You know, after my first arrest I felt like I'd lost everything and . . . I completely lost my will to live and . . . even though I've never been a drinker or used drugs before, I started to self[-]medicate and just went to the darkest place in my life. And I stopped caring about my decisions. I started doing things that I never thought I would ever do. And for the first time in my life I've visited those websites. And . . . that's something that I have to live with and something that I will regret for the rest of my life. But that was . . . rock bottom for me. And it . . . forced me to look in the mirror and admit to myself that I have issues that I need to deal with. . . . I started to try and deal with those things even before I got in trouble again. . . . I started to get treatment for my depression, which improved. I had completely stopped using drugs. I completely stopped visiting those websites. I kept my drinking down from like 40 drinks a day to like six to twelve. And I was . . . still struggling with the drinking. And so . . . I had been checking out AA meetings and talking with my family about getting into treatment. And at the time that I was arrested it had been . . . months since I . . . had done anything illegal. . . . I know that doesn't mitigate the facts, I did it. I know I handled things horribly.

But . . . these months in jail have been really tough too, and they've only reinforced the realization that I've already made before getting here . . . that I need help and that I need to change.

You know, it's been hard. I've been assaulted multiple times because of my charges. And I was put in protective custody and I'm alone 23 and a half hours a day with my thoughts and my regrets, which are the horrible things that I've done. And that's not a good place to be. You know, it's just allowed me to do other things, like focus on my sobriety and to reconnect with my faith again. And those have been good, but . . . these months here in jail have been the worst of my life, only second to the time when I was using and making horrible choices and just in that self-created hell that I've made for myself.

But . . . like I said I've come to this realization now that I need help and that I need to change. And you know, I've never had treatment for alcohol or drugs because it was

never really a problem, but I know that with treatment I will be successful. I know . . . for a fact that I can do that.

You know, my dad did the same thing. He . . . went to treatment when I was born and he stayed sober until the day he died. And I am my father's son. I can do it, too. I know I will. And my brother here, he had the same thing and he's still here and supporting me with my addiction issues and everything else I've gone through.

And similarly with the pedophilia, . . . it was something I kept in check my entire life and I . . . reached the lowest point that I've ever been and I just let my demons get ahold of me, because it is something I've never been treated for. And I know that with treatment that this is something that doesn't have to be an issue for me. . . . I've read multiple books since I've been in here on sexual behavior and dysfunction and disorders. And every book I've read is affirming to me that hope is not lost for me. I just need – I just need help. And with help I know that I will not re-offend. I can tell you that with absolute certainty.

I know in the PSI it says that I'm high risk because of . . . the substance abuse and this being my second offense and I acknowledge that. I acknowledge that concern, because I did not handle probation well. I made a huge, huge mistake. And I acknowledge [the probation officer's] professional opinion. And it sounds like he did a good job with my PSI and was thorough.

I can tell you, Your Honor, I know in my heart that I'm not high risk. I know that I have a lot of work to do. I know that I need treatment for drugs and alcohol. And I know I need treatment for my sexual compulsion or disorder. But I know that with that treatment I will be successful. I know it in my heart. I can tell you with absolute certainty.

You can't measure your self-desire to change on a PSI. You can't measure motivation or a willingness to change. I want to change. And I want to get help. And I know that if I'm just given an opportunity to get that help that I will be successful. And I plan to be successful.

You know, . . . like I said in my letter . . . not having insurance . . . and not having a stable income, and not being able to get treatment vouchers and just obstacles to treatment, and . . . I take responsibility for that, too. Because I should have just asked by mom for help, but I didn't want to put that burden on her. But I have plans to get a job. My brother has construction contacts. He's said he can get me a job. That doesn't alleviate the insurance issue, but the financial issues, my mom said that she'll support me if issues arise.

And . . . I have the most amazing family that anyone could ever ask for. And . . . they didn't really understand what I was struggling with, because I was ashamed and embarrassed. But they know now and they still stand beside me and love me and support me. And I know that they're not going to let me fall again. And I'm not going to let them down.

I know I really screwed up. And I know that . . . I'm looking at years and years and years in prison. But – if you just give [me] an opportunity to get treatment I promise you I will not screw this up again. I will follow every letter of my probation. I'll get the help that

I need. I will not mess this up. Because I've been a driven and motivated person my entire life. I am motivated to do this.

I know that I have a lot of work ahead of me. It is not going to be easy, because change isn't easy. Sorry. But if you just give me a change, if you are willing to take a chance on me, won't let you down and I won't let my family down. And I won't let myself down.

The district court sentenced Harms to 15 to 20 years' imprisonment on each of the three counts with the sentences ordered to be served consecutively.

## 2. DIRECT APPEAL

Harms timely filed his direct appeal and was represented by different counsel than had represented him during the plea and sentencing. On direct appeal, Harms assigned as error that (1) the district court abused its discretion in imposing excessive sentences and ordering them to be served consecutively and (2) he received ineffective assistance of counsel due to trial counsel's failure to: (a) review the photographs of alleged pornography; (b) raise a double jeopardy claim; (c) have Harms submit to a psychosexual evaluation; (d) object to consecutive sentences imposed by the district court; and (e) request a change of venue. He also alleged that he received ineffective assistance of trial counsel due to the cumulative effects of trial counsel's errors.

In May 2020, this court affirmed Harms' convictions and sentences finding that his sentence was not excessive and that his claims of ineffective assistance of trial counsel were meritless with the exception of his claim that his trial counsel was ineffective for failing to review the photograph evidence of the alleged pornography. See *State v. Harms*, No. A-19-630, 2020 WL 2754880 (Neb. App. May 20, 2020) (selected for posting to court website). Thereafter, Harms filed a petition for further review in the Nebraska Supreme Court which was denied in July 2020 and the mandate issued on August 3.

## 3. CURRENT POSTCONVICTION

Harms timely filed the instant motion for postconviction relief on July 29, 2021. In his motion, he argued that (1) he was denied due process because he was not competent during the pendency of his case to proceed and assist in his own defense; (2) his plea was obtained in violation of his due process rights and was involuntary because the court made an insufficient inquiry into whether he was thinking clearly and whether his medication, or lack thereof, was affecting his judgment and ability to understand the proceedings; (3) trial and appellate counsel were ineffective in failing to investigate whether he was competent to assist in his defense or enter into a plea agreement and raise the claim on direct appeal; and (4) his plea was the result of unreasonable advice by counsel because (a) trial counsel was ineffective in advising him of the penalties associated with his plea, (b) trial counsel was ineffective in advising what his sentence would be if imposed consecutively, (c) that the trial court did not arraign him on the original information nor advise him of the penalties for the charged offenses, (d) that in pleading to three counts of possession he believed he was facing a reduced penalty from a mandatory minimum of 30 to 200 years' imprisonment to a sentence of up to 60 years' imprisonment with no mandatory minimum,

(e) trial counsel failed to give a reasoned analysis of the lawfulness of the searches and seizures conducted in the case for consideration of a motion to suppress; (f) that trial counsel provided deficient advice by failing to give him an assessment of his available defenses, (g) trial counsel unreasonably advised him that his likely sentence under the plea agreement would be 3 to 5 years' imprisonment on each count to run concurrently, (h) trial counsel's assessment of the available defenses, benefits, and detriments of the plea agreement was unreasonable and prejudiced him, and (i) that appellate counsel was ineffective in failing to preserve the claims on direct appeal.

The district court denied Harms' motion for postconviction relief without an evidentiary hearing finding that his first two due process claims relating to his lack of competency during the plea were procedurally barred because they could have been litigated on direct appeal; that he failed to show that a motion for a competency hearing would have been successful and that his claim of incompetency was refuted by the plea colloquy; that he failed to articulate what specific challenges trial counsel should have made or how a suppression would have been successful in excluding evidence in this case; that he failed to allege sufficient facts to establish prejudice resulting from trial counsel's alleged misrepresentation as to the potential sentence, and that any such prejudice was refuted by the favorable plea agreement; that counsel's alleged promise related to duration of Harms' sentences was refuted by the record; and that he failed to set forth any authority or argument to establish that any issues in his motion would have changed the outcome of his direct appeal or that the alleged errors of trial counsel had an impact on the outcome. Harms now appeals from the district court's order denying his motion for postconviction relief without an evidentiary hearing.

## III. ASSIGNMENTS OF ERROR

Harms' assignments of error, renumbered and restated, are that the district court erred in dismissing his motion for postconviction relief without an evidentiary hearing because he was entitled to an evidentiary hearing on the following claims: (1) that he was denied due process of law and/or his plea was not voluntary because he was incompetent at the time he pled to the amended charges; and (2) his appellate counsel provided ineffective assistance by failing to preserve in his direct appeal the following claims of ineffective assistance of trial counsel in that trial counsel: (a) failed to investigate and assert his lack of competency to plead to the amended charges; (b) failed to pursue a motion to suppress evidence of the images that were obtained from his iPad; (c) improperly advised Harms of the range of penalties associated with the original charges; and (d) inaccurately represented the likely sentences associated with the amended charges to which Harms pled.

## IV. STANDARD OF REVIEW

When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court determines de novo whether the petitioner has alleged facts that would support the claim and, if so, whether the files and records affirmatively show that he or she is entitled to no relief. *State v. Jennings*, 312 Neb. 1020, 982 N.W.2d 216 (2022).

- 6 -

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. *State v. Hessler*, 288 Neb. 670, 850 N.W.2d 777 (2014). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Id.*

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Ammons*, 31 Neb. App. 489, 984 N.W.2d 330 (2022). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Jennings, supra*.

## V. ANALYSIS

Harms generally assigns that the district court erred in denying his motion for postconviction relief without an evidentiary hearing related to his claims. We briefly review the standard for motions for postconviction relief before addressing his specific claims that he asserts entitled him to an evidentiary hearing.

The district court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the state or federal Constitution. *State v. Jennings, supra*. However, the allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *Id.* An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

Further, as it relates to a motion for postconviction relief in the context of a plea-based conviction, generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Privett*, 303 Neb. 404, 929 N.W.2d 505 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

### 1. LACK OF COMPETENCY TO ENTER PLEAS

Harms first argues that he was entitled to an evidentiary hearing governing his claim that he lacked competency to enter pleas to the amended charges and that his pleas were involuntary and he was denied due process of law. In connection with his direct appeal from his pleas, Harms was represented by appellate counsel who was different that his trial counsel and failed to raise this claim.

A motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and which were or could have been litigated on direct appeal. *State v. Jackson*, 15 Neb. App. 523, 730 N.W.2d 827 (2007). Additionally, an appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on

its face that the basis for relief was not available at the time the movant filed the prior motion. *Id.* The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity. *Id*.

Neither Harms' trial counsel nor appellate counsel raised the issue of Harms' competency in connection with his original pleas or the direct appeal therefrom. Harms now raises this claim for the first time in connection with his postconviction motion without pleading that the basis for relief was not available to him at the time he filed his direct appeal. Notwithstanding this point of law, Harms argues that the procedural bar to having failed to timely raise this claim does not apply to a claim of competency. In support of that proposition, Harms cites to our court's holding in *State v. Johnson*, 4 Neb. App. 776, 551 N.W.2d 742 (1996) (where this court found no procedural bar in connection with the facts of that case).

But in *State v. Watkins*, 284 Neb. 742, 748-49, 825 N.W.2d 403, 408-09 (2012), the Nebraska Supreme Court distinguished *Johnson, supra*, in holding:

> Approximately 3 years after *Johnson,* this court again applied a procedural bar to a competency claim raised for the first time in a second motion for postconviction relief. In *State v. Ryan,* the defendant did not raise any issues regarding competency to stand trial on direct appeal or in his first motion for postconviction relief. The trial court determined that the competency claims were procedurally barred but that even if not barred, the defendant was not entitled to relief because he was clearly competent during his trial. This court agreed, stating that because the defendant failed to raise the competency issue on direct appeal or in his first postconviction proceeding, the claim was procedurally barred unless the defendant could show that the basis for relief was unavailable when the prior motions were filed. This court reasoned that the reports on the defendant's mental condition, which were prepared before his trial, were available to the defendant and his counsel at all times. We stated, "Allowing [the defendant]to first raise the issue of competency after more than 10 years of appellate litigation during which [the defendant] chose not to raise the issue would make a mockery of the finality of the judicial process."
>
> [The appellant] points out that *Ryan* did not overrule *Johnson.* He contends that the *Ryan* court did not hold that the procedural bar must be imposed on every defendant who fails to raise a constitutional issue at the first opportunity and then upon subsequently raising it, fails to show that it was previously unavailable. Thus, he contends that we should not apply the procedural bar rule. We disagree.
>
> We reaffirm our holdings in *Fincher* and *Ryan.* As in those cases, the instant case involves a successive motion for postconviction relief. In contrast, the competency issue was raised in *Johnson* in a first postconviction proceeding after no direct appeal had been taken. While the trial court's colloquy with the defendant in *Johnson* at the time of the plea raised an obvious issue of competence, the district court's colloquy with [the appellant] at the time of his guilty plea does not suggest any such problem. [Appellant's] admission to a mental health center predated his guilty plea, and he has not alleged that his mental health records were not available to his attorneys in any of the prior proceedings. [Appellant] essentially asks for a rule establishing that an issue related to competency to stand trial or to enter a plea is never procedurally barred. While we recognize the constitutional

imperative of an accused's competence to enter a guilty plea, we reject the argument that a procedural bar can never apply to an issue of competence. Because of the need for finality, we decline to establish such a rule.

We make a similar finding here. In this case, Harms failed to raise the issue of his competency in connection with his direct appeal; he fails to allege that the defense was not available to him before; and, following our review of the full colloquy between the district court and Harms during the plea hearing and Harms' allocution at the sentencing hearing, the exchange in no way suggests of an issue regarding Harms' competence. Under these circumstances, although we recognize that this is Harms' first postconviction motion, we find that the district court did not err in finding the issue of Harms' competency was procedurally barred at this stage of the proceedings. See *State v. Rehbein*, 235 Neb. 536, 455 N.W.2d 821 (1990) (holding question of defendant's competence and whether his plea was coerced by promises of counsel could have been raised on direct appeal and cannot be basis for postconviction relief). Accordingly, this assignment of error fails.

## 2. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Harms makes multiple assignments of error in connection with his appellate counsel's failure to assert claims of ineffective assistance by his trial counsel. We first note that Harms' appellate counsel assigned numerous errors relating to Harms' trial counsel on direct appeal, all but one of which were found not to be preserved for postconviction proceedings. As to the one alleged error preserved, Harms did not raise that issue in his postconviction motion. Accordingly, all of Harms' claims of ineffective assistance raised in his postconviction motion were claims that his appellate counsel was ineffective for failing to raise claims of ineffective assistance by his trial counsel, which we commonly refer to as "layered claims." All such layered claims were rejected by the district court without an evidentiary hearing and Harms now appeals from some of those findings. We will address each assigned error in connection with the district court's dismissal of his layered claims without an evidentiary hearing below.

### (a) Failure to Investigate Competency

Harms first argues that, if his claim of lack of competency is procedurally barred, his appellate counsel was ineffective for failing to raise trial counsel's failure to investigate Harms' competency. Specifically, in his postconviction motion, Harms alleged, in connection with this assignment:

31. [Harms'] trial counsel was ineffective in failing to investigate whether [Harms] was competent to assist in his defense or enter into a plea agreement [or] a plea.

32. Trial counsel was aware through conversation with [Harms] about: 1) his mental health history; 2) his involuntary psychiatric hospitalizations; 3) the denial of his medications while in custody[;] and 4) . . . from conversations with [Harms'] mother as to his unstable and deteriorating mental health.

33. That despite a reasonable basis for inquiry, [Harms'] counsel unreasonably failed to investigate [Harms'] mental state and his mental ability to contemplate the nature of the proceedings and whether to enter into a plea agreement.

. . . .

35. [Harms] was prejudiced by [counsel's] deficient performance[.]

The Nebraska Supreme Court stated in *State v. Parnell*, 305 Neb. 932, 946, 943 N.W.2d 678, 688 (2020):

When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the *Strickland* test. If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. Much like claims of ineffective assistance of trial counsel, the defendant must show that *but for* counsel's failure to raise the claim, there is a reasonable probability that the outcome would have been different.

In order to demonstrate prejudice from trial counsel's failure to investigate competency and for failing to seek a competency hearing, the defendant must demonstrate that there is a reasonable probability that the defendant was, in fact, incompetent and that the trial court would have found the defendant to be incompetent had a competency hearing been conducted. *State v. Hessler*, 295 Neb. 70, 886 N.W.2d 280 (2016).

A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense. *State v. Dunkin*, 283 Neb. 30, 807 N.W.2d 744 (2012). Requiring that a criminal defendant be competent has a modest aim: It seeks to ensure that the defendant has the capacity to understand the proceedings and to assist counsel. *State v. Hessler*, 282 Neb. 935, 807 N.W.2d 504 (2011). "A defendant can meet the 'modest aim' of legal competency, despite paranoia, emotional disorders, unstable mental conditions, and suicidal tendencies." *Id.*, 282 Neb. at 952, 807 N.W.2d at 518. "The fundamental question is whether the defendant's mental disorder or condition prevents the defendant from having the capacity to understand the nature and object of the proceedings, to comprehend the defendant's own condition in reference to such proceedings, and to make a rational defense." *Id.*, 282 Neb. at 953, 807 N.W.2d at 518.

We see Harms' allegations of his trial counsel's failure to investigate his competency to enter a plea as similar to those raised in *State v. Privett*, 303 Neb. 404, 929 N.W.2d 505 (2019). In *Privett*, the defendant alleged that his trial counsel was ineffective for failing to investigate a potential defense of his inability to form the intent to commit the crime for which he was charged. In examining this generalized allegation, the Nebraska Supreme Court held:

In the context of a claim of ineffectiveness of counsel for failure to investigate, allegations are too speculative to warrant relief if the petitioner fails to allege what exculpatory evidence that the investigation would have procured and how it would have

affected the outcome of the case. [The defendant] broadly alleged that further investigation required an independent forensic psychologist, but he did not allege what exculpatory evidence would have been discovered by the forensic psychologist or how that evidence would have affected the outcome of the case. We agree with the district court that the facts alleged were insufficient to show deficient conduct by trial counsel.

*Id.*, 303 Neb. at 410-11, 929 N.W.2d at 511-12.

Here, Harms generally averred that his trial counsel was ineffective for failing to investigate his mental state and whether his mental state provided him with the ability to contemplate the nature of the proceedings and whether to enter into a plea. And even if we were to read this generalized allegation in connection with Harms' earlier allegations that he suffered from a psychiatric history including alcoholism, depression, anxiety, post-traumatic stress disorder, and panic disorder with a history of suicide attempts and that he was denied access to medications at times, Harms failed to plead any exculpatory evidence that would have been uncovered through investigation that would tie his alleged medical issues to a lack of competency as it has been defined by the Nebraska Supreme Court. See *State v. Hessler*, 282 Neb. 935, 807 N.W.2d 504 (2011) (holding fundamental question is whether defendant's mental disorder or condition prevents defendant from having capacity to understand nature of proceedings, comprehend defendant's own condition in reference to such proceedings, and to make rational defense). In short, we find that Harms' verified postconviction motion does not contain factual allegations which, if proved, would constitute an infringement of his constitutional right to effective assistance of counsel and the district court did not err in denying him an evidentiary hearing on this basis.

### (b) Failure to Discuss Motion to Suppress

Harms next assigns that appellate counsel was ineffective for failing to preserve his claim that his trial counsel was ineffective when trial counsel failed to discuss with him the lawfulness of the search and seizure of the images located on his iPad or to move to suppress them. In connection with this assignment, Harms alleged in his motion that his trial counsel:

failed to give [him] a reasoned analysis of the lawfulness of the searches and seizures conducted in the case so that consideration could be given to a defense based upon suppression of the unlawful images based upon law enforcement use of a civilian, acting on its behalf, to obtain the images from his electronic device(s), without a warrant.

f) [Harms] was prejudiced by counsel's unreasonable or deficient advice, in that had he . . . been given an assessment of all the available defenses, he would have considered, and was likely to have pursued:

A) The suppression of evidence obtained from [Harms'] [iPad].

B) The suppression of evidence including unlawful images, obtained as the result of the execution of a search warrant, and [Harms'] statements to law enforcement.

. . . .

D) His right to a jury trial to preserve any claims for appeal.

Harms then argues that acceptance of his plea agreement absent an assessment by his trial counsel of all his available defenses including the potential to suppress the relevant images undermines the confidence that he knowingly and intelligently accepted the plea agreement.

However, a defendant must allege facts showing a reasonable probability that he would have insisted on going to trial had counsel informed him of the defense. *State v. Yos-Chiguil*, 281 Neb. 618, 798 N.W.2d 832 (2011). The viability of the defense is relevant as to how it would have reasonably affected the defendant's decision whether to plead guilty or go to trial. *Id.*

In this case, police obtained a warrant to search Harms' iPad after receiving notice from Harms' girlfriend that there were images of child pornography on it. As it relates to those facts which were utilized as a factual basis in support of his plea, Harms now generally alleges that somehow his girlfriend's civilian status in her role here taints the State's discovery of the images procured through a search performed as a result of a subsequent search warrant. But, in making this general allegation, Harms fails to articulate the grounds upon which this would lead to the suppression of the evidence obtained with a warrant.

In *State v. Dean*, 264 Neb. 42, 50, 645 N.W.2d 528, 535 (2002), the Nebraska Supreme Court discussed the specificity of allegations in a motion for postconviction relief stating:

> This court has consistently required that a defendant make specific allegations instead of mere conclusions of fact or law in order to receive an evidentiary hearing for postconviction relief. For example, in *State v. Smith*, 256 Neb. 705, 592 N.W.2d 143 (1999), the defendant alleged that trial counsel was deficient in allowing comment upon the defendant's invocation of the right to remain silent, but we concluded that the defendant's motion did not state facts to support that conclusion-such as who made the comments, what comments were made, when the comments were made, and how the comments violated his rights. In *State v. Russell*, 239 Neb. 979, 479 N.W.2d 798 (1992), the defendant claimed ineffective assistance of counsel because counsel raised only frivolous issues on appeal, but this court determined that the defendant should not receive an evidentiary hearing because the motion merely stated the bald conclusion that his counsel presented frivolous arguments, rather than informing the court what those arguments were, or alleging facts from which the court could determine the frivolity of the issues presented on direct appeal. Finally, in *State v. Threet*, 231 Neb. 809, 438 N.W.2d 746 (1989), the defendant alleged that counsel was ineffective in failing to procure witnesses or utilize available evidence in the defendant's favor, but this court concluded that because the defendant did not specify what witnesses could have been procured or evidence adduced, the trial court need not conduct an evidentiary hearing.

Further in *State v. Munoz*, 309 Neb. 285, 298, 959 N.W.2d 806, 817, cert. denied, 211 L. Ed. 2d 197, 142 S. Ct. 370 (2021), the Nebraska Supreme Court found a defendant's allegations that trial counsel was ineffective for failing to file a motion in limine were insufficient because:

> Lastly, [the defendant] argues on appeal that the district court erred in dismissing his claim that appellate counsel was ineffective "by failing to assert as error trial counsel's failure to file a Motion in Limine as asserted in ground two of his Motion for Postconviction Relief." He generally asserts prejudice as a result, but does not describe the evidence he

believes should have been the subject of the motion in limine, why it should have been excluded, and how the result at trial would have been different but for its admission.

Likewise, in this case, Harms has failed to allege the grounds the trial counsel should have pursued in order to suppress the photographs, how the alleged photographs should have been suppressed based on his girlfriend's status as a civilian, how the subsequent search warrant based on Harms' girlfriend's disclosure to police violated his constitutional rights, or how the outcome would have been different had counsel sought suppression of the images. Accordingly, because Harms failed to allege specific facts relating to counsel's alleged failure to file a motion to suppress the photos, we find that the district court did not err in failing to grant an evidentiary hearing on this claim.

(c) Misinformation on Potential Penalties of Original Charges

Harms next asserts that appellate counsel was ineffective in failing to preserve on direct appeal his claim that trial counsel was ineffective for misinforming him of the potential minimum penalties associated with his original charges. Specifically, Harms argues that trial counsel informed him that each of the ten counts in the original information contained "a minimum term of 3 years" and "up to 20 years in prison" when the actual statutory sentencing range was 0 to 20 years' imprisonment; trial counsel advised that if the sentences for the ten counts were imposed consecutively, Harms "would be facing a minimum term of 30 to 200 years with the minimum term not subject to any good time reduction"; and that, based upon his trial counsel's "gross misinformation" that each of the initial ten charged offenses "carried a mandatory minimum 3-year penalty for each count, [Harms] reasonably believed that he was facing a reduced penalty from a mandatory minimum of 30-200 years on the original charges to a sentence of up to 60 years, with no mandatory minimum term on the amended charges." Brief for appellant at 14-15. Harms asserts that, because he was erroneously advised that each of the original charges carried a mandatory minimum sentence which he believed would have to be served consecutively, his plea could not have been knowingly or intelligently made.

The flaw in Harms' argument is that the plea agreement involved Harms pleading no contest to three of the original charged offenses with the State agreeing to dismiss the other seven counts of the original information. All of the charged offenses, the three to which Harms pled, and the seven which were dismissed by the State, were always charged as Class IIA felonies. And, although Harms' initial arraignment was not part of the bill of exceptions in Harms' initial appeal or part of this appeal, the bill of exceptions for Harms' plea hearing makes clear that Harms was advised that Class IIA felonies were punishable by a minimum of 0 years' imprisonment and a maximum of 20 years' imprisonment for each count. Additionally, Harms was informed by the district court that the court could impose the sentences either concurrently or consecutively. Thus, prior to Harms' plea in this case, he was properly advised by the court that Class IIA felonies were punishable by 0 to 20 years' imprisonment. As such, prior to his plea, the initial charges of ten Class IIA felonies subjected Harms to possible penalties of 0 to 200 years' imprisonment, whereas the charges as set forth in the plea agreement subjected Harms to possible penalties of 0 to 60 years' imprisonment. The records and files contradict Harms' claim and affirmatively show that

he is not entitled to relief, and thus no evidentiary hearing is required on this issue. See *State v. Golka*, 281 Neb. 360, 796 N.W.2d 198 (2011). This assigned error fails.

(d) Inaccurate Representation of Likelihood of Sentences
Being Imposed Concurrently

Harms next argues that his appellate counsel was ineffective for failing to preserve his claim on direct appeal that he received ineffective assistance of trial counsel when his trial counsel represented to him that each of the three counts to which Harms pled would likely carry concurrent sentences of 3 to 5 years' imprisonment.

When a defendant had unequivocally represented to the court at the plea hearing that no promises were made by anyone regarding the sentence to be imposed, the defendant was not entitled to an evidentiary hearing on his postconviction claim to the contrary. *State v. Dragon*, 287 Neb. 519, 843 N.W.2d 618 (2014).

Here, during the plea hearing the following colloquy took place:

THE COURT: Has anyone told you or lead you to believe that if you entered into these pleas today that you would get a light sentence, be rewarded, or promised you anything to get you to plead no contest?

MR. HARMS: No.

THE COURT: Have there been any threats made, inducements, promises of leniency made by anyone, especially law enforcement, to get you to plead no contest today?

MR. HARMS: No.

THE COURT: Are your pleas here your own free and voluntary act?

MR. HARMS: They are.

THE COURT: And you've had enough time to discuss your case with your attorney.

MR. HARMS: I have.

THE COURT: Are you satisfied with your attorney and feel that you've been properly represented?

MR. HARMS: Yes.

Additionally, the district court informed Harms that by pleading no contest he understood that:

THE COURT: And as a Class 2A felony, sir, do you understand that the maximum sentence that can be imposed on each count is a maximum of twenty years and a minimum of zero years?

MR. HARMS: I understand.

THE COURT: And because there's multiple counts, you understand that the sentence imposed by this Court can be what we call concurrent, meaning that it runs at the same time. Or the Court can impose consecutive sentencing, meaning one after the other?

MR. HARMS: I understand.

Based on our review of this record, because Harms unequivocally expressed that no promises were made in relation to the potential sentence he would receive, and that he understood,

- 14 -

based on the court's advisement, the possible sentence that could be imposed, we find that the district court did not err in denying his motion for postconviction relief on this claim.

## VI. CONCLUSION

Having found that Harms' assignments of error were insufficiently pled, are without merit, or are procedurally barred, we affirm the district court's denial of Harms' motion for postconviction relief without an evidentiary hearing.

AFFIRMED.