Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2022 08:04 AM CST

State of Nebraska, appellee, v.
Leandre R. Jennings III, appellant.
___ N.W.2d ___

Filed December 2, 2022.    No. S-22-185.

1. **Postconviction: Proof: Appeal and Error.** When a district court denies
   postconviction relief without conducting an evidentiary hearing, an
   appellate court determines de novo whether the petitioner has alleged
   facts that would support the claim and, if so, whether the files and
   records affirmatively show that he or she is entitled to no relief.
2. **Postconviction: Records: Appeal and Error.** The appellate court does
   not conduct an appeal of a postconviction review sua sponte; as with
   all appeals, the alleged errors of the lower court must be both specifi-
   cally assigned and specifically argued in the brief of the party asserting
   the errors to be considered by the appellate court. The appellate court
   will not scour the record on appeal to understand unclear arguments or
   find support for broad conclusions.
3. **Effectiveness of Counsel: Appeal and Error.** With regard to the
   questions of counsel's performance or prejudice to the defendant as
   part of the two-pronged test articulated in *Strickland v. Washington*,
   466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate
   court reviews such legal determinations independently of the lower
   court's decision.
4. **Postconviction: Constitutional Law: Proof.** The district court must
   grant an evidentiary hearing to resolve the claims in a postconviction
   motion when the motion contains factual allegations which, if proved,
   constitute an infringement of the defendant's rights under the state or
   federal Constitution.
5. **Postconviction: Pleadings.** The allegations in a motion for postcon-
   viction relief must be sufficiently specific for the district court to
   make a preliminary determination as to whether an evidentiary hearing
   is justified.
6. **Postconviction: Constitutional Law: Proof.** An evidentiary hearing is
   not required on a motion for postconviction relief when (1) the motion

does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief.

7. **Jury Instructions: Proof: Appeal and Error.** In reviewing a claim of prejudice from jury instructions given or refused, the appellant has the burden to show that the allegedly improper instruction or the refusal to give the requested instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.

8. **Jury Instructions: Appeal and Error.** All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.

9. **Postconviction: Appeal and Error.** Upon the filing of a motion seeking postconviction relief, an appellate court has the obligation to determine whether the prisoner is entitled to no relief, in which case the motion is dismissed, or, alternatively, conclude that the defendant is entitled to a hearing to determine if he or she is entitled to relief.

10. **Postconviction: Prosecuting Attorneys: Notice.** If a defendant is entitled to an evidentiary hearing on a postconviction motion, the court shall cause notice to be served on the county attorney.

11. ____: ____: ____. The State, through its county attorneys, can, and often does, participate at earlier points in the postconviction process, but is only called upon to take action with respect to a motion once it receives notice from the court.

Appeal from the District Court for Douglas County: Kimberly Miller Pankonin, Judge. Affirmed.

Leandre R. Jennings III, pro se.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.
## INTRODUCTION
The appellant, Leandre R. Jennings III, was convicted of first degree murder, use of a weapon to commit a felony, and

possession of a deadly weapon by a prohibited person. He was sentenced to life imprisonment, 30 to 40 years' imprisonment, and 40 to 45 years' imprisonment, respectively. His convictions and sentences were affirmed by this court on direct appeal.[1] Jennings then filed a motion seeking postconviction relief, which was denied without an evidentiary hearing. Jennings appeals that denial. We affirm.

## BACKGROUND

Jennings was convicted of murder and associated crimes in the shooting death of Michael Brinkman (Brinkman) on December 23, 2016. The facts underlying those convictions are set forth in greater detail in this court's opinion on appeal.[2] In brief, Brinkman was at his home in Douglas County along with his wife, Kim Milius, and his adult son, Seth Brinkman (Seth). Two men entered the home, and following an altercation, Brinkman was shot and killed. Other evidence was offered at trial, but as relevant to this postconviction motion, fast food from Raising Cane's, including french fries, a piece of partially eaten Texas toast, and a container and lid of "Cane's sauce" was found at the scene. The sauce container and lid and the toast were swabbed for DNA. Following testing of the DNA, Jennings could not be excluded as a contributor to these, as well as other items, and was arrested and charged.

Jennings was convicted in 2018. This court affirmed his conviction in May 2020, and Jennings thereafter filed a motion for postconviction relief on May 6, 2021. He subsequently filed two amended motions. The operative pleading in this case is the motion for postconviction relief filed on October 6, 2021. In that motion, Jennings alleged that he had the same trial and appellate counsel and that both were ineffective in (1) failing to object to the State's destruction of evidence; (2) failing to object to false statements made in law enforcement's affidavit

---

[1] *State v. Jennings*, 305 Neb. 809, 942 N.W.2d 753 (2020).

[2] See *id.*

in support of a search warrant for his cell phone records; (3) failing to interview or call certain witnesses; (4) not objecting to jury instruction No. 4; (5) failing to seek retesting of biological material; (6) failing to obtain from law enforcement evidence that could have been used to impeach law enforcement testimony; and (7) failing to object to testimony offered by an investigating detective. He further alleged that (8) the State engaged in prosecutorial misconduct by not disclosing certain evidence, and (9) the trial court committed trial error when it admitted Jennings' cell phone data.

The district court denied Jennings' motion without an evidentiary hearing. In its order, the court first noted that counsel could not be found to be ineffective for failing to object to the State's destruction of the toast because the record indicates that the destruction was not made in bad faith, but was part of a laboratory policy that food could not be stored as evidence.

The court also rejected Jennings' claims of false statements regarding the ethnicity of the suspects in the affidavit in support of the warrant for his cell phone data. The court reasoned that the issuing magistrate did not rely on the ethnicity of the suspects in determining probable cause. It rationalized that the magistrate instead focused on the vehicle reportedly parked in front of the home at the time of the home invasion and the relationship between the person who rented that vehicle and Jennings, who had previously driven the vehicle and whose DNA was found at the scene of the home invasion.

The court then addressed, and found without merit, Jennings' claims that his counsel failed to investigate certain witnesses and issues prior to trial. As set forth by the court, Jennings alleged that counsel failed to seek DNA retesting, did not obtain video of Jennings' time spent in the interrogation room, and did not call certain witnesses. The district court found that Jennings' allegations were conclusory and did not establish prejudice as required by *Strickland v. Washington*.[3]

---

[3] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The court next addressed and rejected Jennings' claim that counsel erred in not objecting to jury instruction No. 4. As read to the jury, that instruction provided:

Depending on the evidence you may return one of two possible verdicts to Count 1 of the information. You may find [Jennings], one, guilty of murder in the first degree felony murder or two not guilty.

Felony murder. The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict [Jennings] of murder in the first degree felony murder as charged in Count 1 of the information are, one, that . . . Jennings intended to commit the crime of robbery. And two, that on or about December 23rd 2016, in Douglas County, Nebraska, [Jennings] was in the course of committing or attempting to commit that robbery. And three, that [Jennings] either alone or by aiding and abetting another killed . . . Brinkman during the course of committing or attempting to commit that robbery.

A person commits robbery if, with the intent to steal, forcibly and by violence, or by putting in fear, take from the person of another any money or personal property of any value whatever.

A person commits attempted robbery if he intended to commit a robbery and he intentionally engaged in conduct that under the circumstances as he believed them to be was a substantial step towards committing the robbery and the person[']s conduct strongly corroborated his intent to commit robbery.

The State has the burden of proving beyond a reasonable doubt each and every one of the foregoing material elements of the crime of murder in the first degree felony. If you find from the evidence beyond a reasonable doubt that each of the foregoing material elements is true, it is your duty to find [Jennings] guilty of murder in the first degree felony murder as charged in Count 1.

On the other hand, if you find the State has failed to prove beyond a reasonable doubt any one or more of the foregoing material elements, it is your duty to find [Jennings] not guilty.

The burden of proof is always on the State to prove beyond a reasonable doubt all of the material[] elements of the crime charge[d] and this burden never shifts.

Jennings takes issue with the language at the end of the opening paragraph that he "either alone or by aiding and abetting another killed . . . Brinkman during the course of committing or attempting to commit that robbery." The district court noted that the instruction was a correct statement of the law and that Jennings offered no argument or authority to show otherwise.

The district court then addressed and found without merit Jennings' contention that one of the investigating officers falsely testified with respect to alleged inconsistent statements made by a witness. The district court noted that Jennings did not identify where these statements were made in the record, and it further noted that trial counsel's decisions about making certain objections were generally considered to be trial strategy, for which counsel is afforded due deference.

Finally, the district court rejected Jennings' claims of prosecutorial misconduct and trial court error, concluding those issues were procedurally barred.

## ASSIGNMENTS OF ERROR

On appeal, Jennings assigns, restated, that the district court erred (1) in denying his motion for postconviction relief without an evidentiary hearing because his trial counsel was ineffective in failing to (a) object to the destruction of the toast found at the scene, (b) object to false statements made in the affidavit and warrant seeking his cell phone records, (c) investigate certain witnesses, (d) object to jury instruction No. 4, and (e) object to the testimony of Det. Larry Cahill, and (2) by denying his motion without first giving him an opportunity to respond to the State's reply.

## STANDARD OF REVIEW

[1,2] When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court determines de novo whether the petitioner has alleged facts that would support the claim and, if so, whether the files and records affirmatively show that he or she is entitled to no relief.[4] The appellate court does not conduct this review sua sponte, however; as with all appeals, the alleged errors of the lower court must be both specifically assigned and specifically argued in the brief of the party asserting the errors to be considered by the appellate court.[5] The appellate court will not scour the record on appeal to understand unclear arguments or find support for broad conclusions.[6]

[3] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland*, an appellate court reviews such legal determinations independently of the lower court's decision.[7]

## ANALYSIS

*Postconviction Propositions of Law.*

[4-6] The district court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the state or federal Constitution.[8] However, the allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified.[9] An evidentiary hearing is not required on a motion for postconviction relief

---

[4] *State v. Lessley, ante* p. 316, 978 N.W.2d 620 (2022).

[5] *Id*.

[6] *Id*.

[7] *State v. Ellis*, 311 Neb. 862, 975 N.W.2d 530 (2022). See *Strickland v. Washington, supra* note 3.

[8] *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022).

[9] *Id*.

when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief.[10]

## Disposal of Texas Toast.

Jennings first assigns that the district court erred in not granting him an evidentiary hearing on his assertion that counsel was ineffective in its handling of the Texas toast found at the crime scene. In his brief, Jennings argues that his counsel was ineffective because he failed "to suppress the intentional destruction of any biological material evidence."[11] He also argues that counsel was ineffective in failing to seek independent DNA testing because retesting of the material "would have likely exonerated or exculpated [him]"[12] and "could have implicated other suspects."[13] Finally, Jennings argues that law enforcement "acted in bad faith when they did not assess the evidentiary value nor did they consult [Jennings] before destroying any evidence."[14]

Jennings' assertion is without merit. Even assuming we could conclude that Jennings' trial counsel was deficient in failing to object to the destruction of evidence, which occurred prior to counsel's representation of Jennings and in fact prior to Jennings' identification as a suspect and subsequent arrest, Jennings cannot show that he was prejudiced by the destruction of the toast.

As we understand Jennings' allegations, he asserts that retesting or further testing of the DNA evidence from the toast

---

[10] *Id.*

[11] Brief for appellant at 34.

[12] *Id.* at 35.

[13] *Id.* at 36.

[14] *Id.* at 35.

would prove exculpatory. But destruction of the toast is distinct from the sample of DNA swabbed from that toast. The record shows that a swab was taken and that not all of the sample was consumed. Thus, the potential for further testing exists, given the appropriate circumstances and utilization of the correct procedure.

Moreover, even if the DNA from the toast would have been excluded as a result of the allegedly improper destruction of the toast, that DNA was not the only DNA found at the scene. Just as Jennings could not be excluded from the toast sample, he was also not excluded from the DNA found on the sauce container and lid, or from a shower rod which Seth testified he used to fend off the home invaders. Given this other DNA evidence, Jennings cannot show that he was prejudiced by the admission of the DNA found on the toast.

We turn next to Jennings' allegation that his counsel was ineffective in failing to seek DNA retesting. It is not clear whether Jennings asserts that all DNA should have been retested or that only the DNA on the toast should have been retested. But in either case, Jennings has failed to allege any circumstances which would have supported retesting at this stage. For example, Jennings does not allege that there are questions about the trustworthiness of the testing procedure or that improved testing methods were available and should have been employed over the methods utilized. Given the lack of such allegations, we cannot find that counsel was deficient in failing to seek retesting.

There is no merit to Jennings' assignment of error.

*Warrant for Cell Phone Data.*

Jennings also assigns that his counsel was ineffective in failing to object to false statements in the affidavit in support of the State's application for a search warrant to obtain Jennings' cell phone records. Specifically, Jennings contends that when Milius called the 911 emergency dispatch service following the home invasion, she reported that the

perpetrators had been white, but that the affidavit averred that Milius indicated the perpetrators were Black. Jennings contends that at the least, the magistrate was misled, and that at the most, the magistrate "abandoned his or her detached and neutral judicial role" by not denying the warrants.[15]

A review of the record demonstrates there is no merit to this assertion. While Milius did initially indicate that she thought at least one of the perpetrators was white, the victim's son, Seth, indicated that both were Black. It is evident from the record that Milius was uncertain initially, while Seth was more certain. Thus, the indication in the affidavit that the perpetrators were Black was not wholly incorrect.

Moreover, as the district court, and to a lesser extent the State, indicated, the crux of the affidavit in support was the

> "nexus between [Carnell Neal] Watt, the newer model white SUV parked in front of [Michael's home] during the time of the home invasion, the 2016 Dodge Durango SU[V] rented by Watt during that time, [and] Watt's statements that she allowed [Jennings] to use the Dodge Durango, and [Jennings'] DNA at the crime[] scene."

There is no indication from the warrant or the affidavit that the ethnicity of the perpetrators had an impact on the magistrate's decisionmaking process in authorizing the cell phone warrant.

The district court did not err in denying Jennings' postconviction relief with respect to this allegation, and there is no merit to this assignment of error.

*Failure to Investigate Witnesses.*

Jennings next assigns that his counsel was ineffective in failing to investigate and call as witnesses three individuals: Dominique Davis, the 911 operator, and Wally Poderys. In addition, at oral argument in this case, Jennings indicated that counsel failed to properly investigate Carnell Neal Watt and

---

[15] *Id.* at 40.

an unidentified law enforcement officer. But he did not otherwise raise either of those individuals in his brief or in his underlying motion, so we do not address either on appeal.

We turn first to Davis. Jennings alleged in his motion that Davis "may provide relevant information pertaining to [his] alibi" and that Davis was "willing to testify about her numerous encounters with . . . Jennings including information about . . . Jennings' frequent visits to her home unannounced and his attempts to conceal their relationship from . . . Watt." Jennings alleged that Davis' "testimony could have been used to impeach the testimony of other witnesses as to . . . Jennings['] whereabouts, demeanor and actions at or around [the] time of [the] incident" and that if "Davis [was] interviewed or called as a witness the testimony could have cleared [Jennings] or implicated other suspects or provided alternative theories of defense and the failure to do so prejudiced . . . Jennings."

The district court found, and we agree, that the allegations regarding Davis' testimony were conclusory. Jennings alleges that Davis could have cleared him, implicated others, or provided alternative theories of the defense. But Jennings does not explain precisely to what Davis would testify that would provide him an alibi or explain who, if not Jennings, murdered Brinkman. Nor does Jennings provide an alternative theory of defense to the one Jennings employed, which was apparently that he did not kill Brinkman and was not present. Jennings has not adequately pled this assertion, and accordingly, we find it to be without merit.

Jennings also argues that counsel was ineffective in failing to interview or call the 911 operator that answered Milius' call to emergency services. Jennings claims that the 911 operator "changed the racial description of the suspects after hanging up the original call from Milius." Jennings alleges that the operator's testimony could have been used "to impeach the testimony of [the] others about the reported information."

The record demonstrates that Milius was initially uncertain about the ethnicity of the perpetrators, while Seth was certain

that they were Black males. As noted above, the crux of the warrant was not the fact that one of the perpetrators was initially identified as white. The crux was that a vehicle matching the description of a vehicle that Jennings had access to was parked at the scene of the home invasion, that Jennings' DNA was found at the scene of the home invasion, and that these items provided probable cause for the warrant. Interviewing or further investigating the 911 operator would not have changed this result. There is no merit to this assertion.

Jennings next contends that his counsel was ineffective for failing to call Poderys. Jennings alleges that testimony from Poderys—who by the time of trial was deceased—could have "provided a motive to commit the underlying felony and provide some exculpatory evidence," because of Poderys' "toxic relationship with Brinkman and the recent threat[en]ing text messages Brinkman received about an old debt." The district court rejected this claim, addressing Jennings' failure to investigate allegations globally and reasoning that the allegations in Jennings' motion were "generic and most importantly, do not state what exculpatory evidence would have been gathered or how such evidence would have changed the outcome of the trial."

We agree these allegations were conclusory in nature. In his motion, Jennings does not explain what motive Poderys had or explain the nature of the toxic relationship between Poderys and Brinkman, except to explain it involved an "old debt." Jennings does not explain what Poderys would testify to that would have led to a different result in Jennings' trial. For these reasons, there is no merit to this assignment of error.

*Jury Instruction No. 4.*

Jennings also contends that the district court erred in giving jury instruction No. 4. The full instruction is set forth above. In short, Jennings contends that the portion of the instruction that stated Jennings could be found guilty "either alone or by aiding and abetting another" was an incorrect statement

of the law and "shifts [the] burden of 'beyond a reasonable doubt' to [Jennings]."

[7,8] In reviewing a claim of prejudice from jury instructions given or refused, the appellant has the burden to show that the allegedly improper instruction or the refusal to give the requested instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.[16] All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.[17]

We first observe that Jennings directs us to no authority suggesting that the challenged language from jury instruction No. 4 was an incorrect statement of the law. In fact, this court implicitly approved of this very same instruction in *State v. Pope*.[18]

We agree that the language highlighted by Jennings is not part of the usual pattern jury instruction for felony murder. But that pattern instruction does not, itself, encompass an aider and abettor situation; rather, it envisions a single defendant. However, there is also a pattern instruction that covers the situation where there is potential aider and abettor culpability.[19] That instruction was also given. When all the instructions are given together, it is clear that the additional language in jury instruction No. 4 was to cover the gap between the felony murder and the aider and abettor instructions and make them consistent.

Moreover, Jennings claims that the challenged language shifted the burden of proof. He does not explain how the language does this, nor does he cite to any authority in support of his argument. In any event, the jury was instructed that

---

[16] *State v. Pope*, 305 Neb. 912, 943 N.W.2d 294 (2020).

[17] *Id.*

[18] *Id*.

[19] See NJI2d Crim. 3.8 (aider is same crime as principal).

the State always had the burden of proof and that the burden never shifted to Jennings. We find no merit to this assignment of error.

*Failure to Object to Cahill's Testimony.*

Jennings assigns that his counsel erred in failing to object to testimony from Cahill, a detective with the Omaha Police Department. Jennings argues that Cahill should not have been permitted to testify to the contents of a statement made by Watt regarding Jennings' use of a vehicle rented by Watt. In his motion, Jennings alleged that Cahill "changed" Watt's statement from one indicating that she was not sure whether she loaned that vehicle to Jennings, to a statement indicating that she had loaned the vehicle, and that such "change" violated Jennings' right to due process. In his brief on appeal, Jennings argues that Cahill should not have been permitted to testify to the substance of Watt's remarks because she pled the Fifth Amendment and did not testify.

This allegation is not supported by the record. The record affirmatively demonstrates that neither Cahill nor any other law enforcement witness testified at trial as to the content of any conversation had with Watt regarding Jennings' use of a vehicle rented by Watt. As such, we find no merit to this assignment of error.

*Opportunity to Respond to State's Reply.*

Finally, Jennings assigns that the district court erred in denying his postconviction motion without giving him the opportunity to respond to the State's reply to his motion.

[9-11] We recently set out the postconviction procedure in *State v. Burries*,[20] in which we noted that the only required pleading in a postconviction action was the motion seeking relief. "Upon the filing of that motion, the court has the obligation to determine whether the prisoner is entitled to no relief,

---

[20] *State v. Burries*, 310 Neb. 688, 969 N.W.2d 96 (2022).

in which case the motion is dismissed, or, alternatively, conclude that the defendant is entitled to a hearing to determine if he or she is entitled to relief."[21] If a defendant is entitled to a hearing, then the court shall cause notice to be served on the county attorney. While "the State, through its county attorneys, can, and often does, participate at earlier points in the process, the State is only called upon to take action with respect to a motion once it receives notice from the court."[22]

There is nothing in the language of the Nebraska Postconviction Act that allows any type of response from a defendant prior to the dismissal of his motion. Thus, the court did not err insofar as it did not specifically request or order such a filing. Nor is there any indication from this record that Jennings was prohibited from filing such a response. The State's response was served on Jennings on October 12, 2021, and not dismissed by the district court until February 24, 2022, suggesting that Jennings would have had ample opportunity to, at a minimum, seek to file a response. Jennings does not argue that any attempt to do so was denied by the court, and there is no other suggestion in the record that such a denial took place.

There is no merit to Jennings' final assignment of error.

## CONCLUSION

The judgment of the district court denying Jennings' motion for postconviction relief without an evidentiary hearing is affirmed.

AFFIRMED.

---

[21] *Id*. at 693, 969 N.W.2d at 100.

[22] *Id*.