IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. LIERMAN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

DARRYL LIERMAN, APPELLANT.


Filed May 16, 2023.    No. A-22-564.


Appeal from the District Court for Antelope County: MARK A. JOHNSON, Judge. Affirmed.

Michael C. Moyer, of Moyer, Moyer & Lafleur, for appellant.

Michael T. Hilgers, Attorney General, and Matthew Lewis for appellee.


RIEDMANN, BISHOP, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Darryl Lierman appeals from the Antelope County District Court's denial of his motion for postconviction relief without an evidentiary hearing. He argues that his trial counsel was ineffective in failing to call two specific witnesses at trial and in failing to use Lierman's driving logs from his job driving a semi-tractor and trailer in support of an alibi defense. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

Following the alleged sexual abuse of his adopted daughter, B.L., Lierman was convicted by a jury of three counts of first degree sexual assault of a child, two counts of third degree sexual assault of a child, and three counts of child abuse, and was sentenced to a total term of 70 to 140 years' imprisonment. The facts relevant to the charges are

that B.L. alleged this sexual abuse began in approximately 2010. At that time, Lierman was on bond awaiting trial on charges that he sexually abused B.L.'s biological sister, A.L., who was another of Lierman's adopted daughters. Lierman was eventually acquitted by a jury of the charges involving A.L.

B.L.'s allegations first came to light on or about February 12, 2015. On February 7, B.L. ingested an unknown number of pills in an attempted suicide and was taken to a hospital in Kearney, Nebraska. During a counseling session on February 12, B.L. made statements suggesting that Lierman had been sexually abusing her. An interview at a child advocacy center was scheduled, at which time B.L. made further allegations against Lierman, including that he would make her model bras for him and that he would watch her while she was showering. B.L. was placed in foster care while the matter was investigated.

In July 2015, B.L. disclosed that from the ages of 12 to 14, she was subject to digital and penile penetration by Lierman on more than one occasion, primarily while at the family's home in Neligh, Nebraska.

*State v. Lierman*, 305 Neb. 289, 291-92, 940 N.W.2d 529, 536 (2020).

During his direct appeal, he was represented by different counsel than had represented him during his trial and sentencing and raised numerous assignments of error including that his trial counsel was ineffective in various respects. As relevant to this appeal, in determining Lierman's direct appeal, the Nebraska Supreme Court found that certain of his claims of ineffective assistance of trial counsel were either insufficiently pled or were addressed and rejected. State v. Lierman, supra. However, the court determined the record on direct appeal was insufficient to review Lierman's claims that his trial counsel was ineffective in failing to call as witnesses Dr. Ashutosh Atri and Dr. Hugo Gonzalez and in not utilizing evidence of Lierman's driving logs to form an alibi defense. *Id*. Specifically, the Nebraska Supreme Court held:

Lierman first assigns that his counsel was ineffective in failing to call two particular witnesses: Dr. Ashutosh Atri, a doctor at the hospital where B.L. was admitted following her suicide attempt, and Dr. Hugo Gonzalez, another doctor who would have testified that [the victim] never reported a sexual assault to him. Lierman alleges Atri would have testified that [the victim] indicated early in her stay she was not a victim of sexual assault, that she participated in family counseling sessions, and, further, that she made no allegations of sexual assault until she learned she might be discharged to go home soon.

There is nothing in the record to explain why counsel did not call Atri and Gonzalez. As such, we lack the record to determine this issue on direct appeal.

. . . .

Lierman argues that his trial counsel erred in not pursuing an alibi defense through the use of Lierman's driving logs, which were apparently created by Lierman himself. Lierman claims those logs would have shown that he was on the road during some of the "relevant dates."

There is nothing in the record to explain why counsel chose not to introduce these driving records. As such, we lack the record to determine this issue on direct appeal.

*State v. Lierman*, 305 Neb. 289, 313-14, 940 N.W.2d 529, 548-49 (2020). Accordingly, both of these claims were preserved for consideration in subsequent postconviction proceedings.

Lierman timely filed a motion for postconviction relief. He was appointed counsel who subsequently filed an amended motion. The amended motion for postconviction relief contended that trial counsel was ineffective for failing to call as witnesses

> . . . Dr. Ashutosh Atri and Dr. Hugo Gonzalez Nieto, doctors at Richard Young where B.L. was initially taken after being placed in emergency protective custody after ingesting an unknown quantity of pills in an attempt to hurt herself. B.L. was a patient at Richard Young from February 8, 2015[,] until her discharge on February 19, 2015; [and]
>
> . . . That Lierman was prejudiced by trial counsel's failure to call witnesses, Dr. Ashutosh Atri, and Dr. Hugo Gonzalez Nieto[.]

Lierman asserted that, had Dr. Atri and Dr. Gonzalez Nieto been called as witnesses during his trial, they would have testified that the victim did not report an allegation of sexual assault or abuse to them or actively denied such allegations.

The amended motion for postconviction relief also alleged:

> That trial counsel was ineffective for not utilizing the evidence of . . . Lierman's driving logs as an alibi defense; [and]
>
> . . . That Lierman's driving logs were kept in the usual course of business as part of Lierman's job driving a semi-tractor and trailer . . . and would have been helpful in supporting an alibi for some of the dates that were important to the State's case, particularly that on at least some of the dates B.L. alleged she was assaulted by Lierman, he was [out-of-state] driving his truck. . . .

Further, the amended motion alleged "[t]hat any attorney with ordinary skill and training in the area of criminal law, given the facts of this case," would have called Drs. Atri and Gonzalez Nieto as witnesses based on B.L.'s denials of being a victim of sexual assault and the exculpatory nature of said evidence and would have used Lierman's driving logs as an alibi defense based on the exculpatory nature of said evidence. Lierman claimed that he "was actually prejudiced in the defense of his case as a result of trial counsel's actions or inactions" by trial counsel's aforementioned failure and that "had the jury heard this evidence, it would not have convicted Lierman."

During the June 2022 records hearing, the court heard arguments by the State and Lierman's counsel and received into evidence the 11-volume bill of exceptions from Lierman's trial and sentencing. The court declined to receive into evidence Lierman's offer of the depositions of Dr. Ashutosh Atri and Dr. Gonzales Nieto. At the conclusion of the hearing, the court stated:

> There [are] no allegations that [Lierman's driving] logs would show that . . . Lierman was not present for that time frame. And because of . . . the very nature of the time frame itself, it makes alibi almost nearly impossible to show.

But, irrespective of that, there are no specific dates that would be contradictory of evidence or would impeach evidence such that records would affirmatively show . . . Lierman is entitled to relief, and actually the records show otherwise as to the driver's logs.

As to the two doctors not being called on . . . Lierman's behalf, once again, the Court recalls the trial of this matter and it was replete with the fact that when . . . [the victim was] first . . treated because of suicidal ideations that she denied anything inappropriate was taking place at the Lierman home. And it was only until she was advised that she was being returned home did anything of this nature come up.

This was gone over frequently and the evidence that would be presented by the doctors would have been cumulative to the evidence that was received in court and presented to the jury, and had no effect on the jury's deliberation or verdict.

And so the fact that the doctors were not called to testify as to facts that were already presented in evidence . . . affirmatively show that [Lierman] is entitled to no relief as to this count as to the two doctors either.

Following the hearing, the district court filed an order overruling the amended petition for postconviction relief in its entirety. Lierman has timely appealed to this court.

## ASSIGNMENTS OF ERROR

Lierman's assignments of error can be restated as follows: that the district court erred in denying his amended motion for postconviction relief without an evidentiary hearing on the basis that his trial counsel was ineffective in failing to call Dr. Atri and Dr. Gonzalez Nieto as witnesses during his trial, and in failing to utilize the evidence of Lierman's driving logs as an alibi defense.

## STANDARD OF REVIEW

When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court determines de novo whether the petitioner has alleged facts that would support the claim and, if so, whether the files and records affirmatively show that he or she is entitled to no relief. *State v. Jennings*, 312 Neb. 1020, 1026, 982 N.W.2d 216, 223 (2022).

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Ammons*, 31 Neb. App. 489, 984 N.W.2d 330 (2022). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Jennings, supra*.

## ANALYSIS

Lierman argues that the district court erroneously denied his motion for postconviction relief without an evidentiary hearing. Specifically, he contends that the district court erred in failing to find that Lierman's trial counsel was ineffective for failing to call Dr. Atri and Dr. Gonzalez Nieto as witnesses during his trial and in failing to utilize the evidence of Lierman's driving logs

as an alibi defense. We briefly review the standard for motions for postconviction relief before addressing Lierman's specific claims that he asserts entitled him to an evidentiary hearing.

The district court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the state or federal Constitution. *State v. Jennings, supra*. However, the allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *Id.* An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

FAILURE TO CALL DOCTORS AS WITNESSES AT TRIAL

Lierman first contends that the district court erred in denying his motion for postconviction relief without an evidentiary hearing based upon trial counsel's failure to call Dr. Atri and Dr. Gonzalez Nieto as witnesses during his trial. He contends that "[a]ny attorney of ordinary skill and training in the area of criminal law, given the facts of this case, would have called said witnesses based on [the victim's] denial of being a victim of sexual assault and the exculpatory nature of said evidence." Brief for appellant at 13. Lierman contends that his trial counsel's failure to call two doctors who would have testified that the victim did not immediately disclose the alleged sexual abuse was prejudicial and, "had the jury heard this evidence, it would not have convicted Lierman." We disagree because the alleged exculpatory evidence was cumulative of evidence that was presented at trial.

Cumulative evidence means evidence tending to prove the same point of which other evidence has been offered. *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014); *State v. Prado*, 30 Neb. App. 223, 967 N.W.2d 696 (2021).

In *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022), the Nebraska Supreme Court considered the defendant's claim that trial counsel's performance was deficient for failing to subpoena witnesses who could offer foundation for the presentation of additional exhibits resulting in the exclusion of the exhibits from evidence. The court determined that, because the evidence in the exhibits which were excluded were "cumulative of other admissible testimony and evidence," the defendant failed to establish that counsel was ineffective. *Id.*, 311 Neb. at 339, 971 N.W.2d at 775. We reach the same conclusion in the instant case.

During her trial testimony, the victim testified that when she went to Richard Young after her suicide attempt, "a lot of people, they talked to me, but I didn't want to tell them what happened because . . . I didn't want to rip my family apart, I . . . was scared, . . . they talked to me and asked me but I didn't tell them anything for a long time." The following colloquy occurred between the prosecutor and the victim:

> Q. When did you first start talking about at least some of the things that had happened?

A. When I was there, my parents came up for family therapy, and I tried telling [Lierman] without actually telling everybody that I didn't like the way he was treating me, and I didn't always want to cuddle with him or have him spank me and wrestle and joke around like that, I didn't like that. And he just looked at me, he knew what I meant, and he just glared, and after family therapy he . . . was just really mad and wouldn't even tell me good-bye, so I knew, I knew if I went home it wouldn't be good, and they were getting ready to send me home, so I told my therapist, I started to tell a couple things.

Q. You started what?

A. I started to tell them a couple of things that had happened because I was scared to go home.

Q. And then did they take you to some other place?

A. Yes.

Q. Tell me about that.

A. I went to this place in Kearney and they took me to this room with a camera in there and this lady asking me questions, and she kept asking me things and I kept telling her I didn't want to get anybody in trouble, I didn't want . . . to say anything to get [Lierman] in trouble, I just kept telling her things like that.

. . . .

Q. Remember – do you know who Deb Milligan is?

A. Yes.

Q. Who's Deb Milligan?

A. My therapist when I was in foster care in O'Neill.

Q. Do you remember . . . the first time you told her anything, the kind of things we've discussed the last half day or so?

A. I don't remember for sure. I knew it took awhile [sic].

We also note that trial counsel extensively cross-examined the victim. The exculpatory evidence that Lierman claims the two doctors could have provided had already been introduced at trial through the victim's testimony. And because the testimony that Lierman claimed should have been adduced through the doctors' testimony was "cumulative of other admissible testimony and evidence," Lierman failed to establish that counsel was ineffective for failing to call the doctors as witnesses.

Further, when we weigh the effect of trial counsel's allegedly deficient failure to call Dr. Atri and Dr. Gonzalez Nieto against the remaining evidence, we conclude that there is not a reasonable likelihood the outcome would have been different had the two doctors testified.

In *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018), the Nebraska Supreme Court considered, in a postconviction relief setting, the prejudicial effect of trial counsel's failure to call a witness who allegedly would have identified the perpetrators of the offenses as having different characteristics than the defendants charged with those crimes. The court explained:

"In making [the prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have

been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *State v. Newman*, 300 Neb. at 782-83, 916 N.W.2d at 407, quoting *Strickland v. Washington, supra.* See, also, *State v. Stricklin, supra.* In both cases, we concluded that in the context of all the evidence adduced at trial, the omitted testimony "would not have altered the evidentiary picture and would, at best, have had an isolated or trivial effect on the jury's findings." See *State v. Newman,* 300 Neb. at 783, 916 N.W.2d at 407. Accord *State v. Stricklin, supra.*

*State v. Henderson*, 301 Neb. at 641, 920 N.W.2d at 257.

Here, the evidence against Lierman at his trial was clearly sufficient to support his convictions. As the Nebraska Supreme Court noted in its opinion on direct appeal: "We find that the evidence was sufficient to support Lierman's convictions. B.L. testified that she was sexually assaulted by Lierman during the relevant time periods. This court does not reweigh that evidence." *State v. Lierman*, 305 Neb. 289, 305-06, 940 N.W.2d 529, 544 (2020). Further, another victim, also Lierman's biological daughter (victim #2), testified that similar abuse occurred to her. DNA evidence that included Lierman and victim #2 was found on bedding and a purple sex toy that the other victim contended Lierman had used on her. Further, during her testimony, Deb Milligan explained that "rarely" do children report abuse right away and "almost always it's been going on for a long time before they report." Milligan explained that

Children often wait a long time before they disclose, they often are ashamed and embarrassed about what's going on, they don't want anybody to know, they don't want to have to tell anyone, they're afraid, they are afraid of being blamed, they are afraid of not being believed. Very often, well, almost always the perpetrators know that what they're doing is wrong and they know that they're going to get in trouble if they get found out.

. . . .

And so [the perpetrators] bribed, coerced, and threatened victims into silence.

. . . .

Children very often are very ashamed of what's going on, it's embarrassing, they don't want people to know, they sometimes don't even want to talk about those body parts. They feel very ashamed. They're embarrassed.

Milligan also noted that "a lot of times" the children "blame themselves" and "think that they should have been able to make it stop somehow, . . . that maybe it was their fault, that maybe it's something about them, something that they did that caused it to happen." Milligan also noted that child victims usually fear the perpetrator as well as having "[f]ear of being removed from the home, fear of not being part of the family anymore, fear that the perpetrator will either hurt them

or another family member, fear of other people's reactions, fear of not being believed" and "fear of being blamed."

The evidence adduced by the State overwhelmingly established Lierman's guilt and explained why the victim did not immediately disclose the abuse. As the Nebraska Supreme Court has stated, "in the context of all the evidence adduced at trial, the omitted testimony 'would not have altered the evidentiary picture and would, at best, have had an isolated or trivial effect on the jury's findings.'" See *State v. Henderson*, 301 Neb. at 641, 920 N.W.2d at 257. This claim of ineffective assistance of counsel is without merit.

DRIVING LOGS

Lierman also contends that the district court erred in denying his motion for postconviction relief without an evidentiary hearing based upon trial counsel's failure to utilize the evidence of Lierman's driving logs as an alibi defense. His amended motion for postconviction relief alleged that the driving logs "were kept in the usual course of business as part of Lierman's job driving a semi-tractor and trailer . . . and would have been helpful in supporting an alibi for some of the dates that were important to the State's case."

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Assad*, 304 Neb. 979, 938 N.W.2d 297 (2020). We have characterized "prejudice," in the context of alleged ineffective assistance of counsel, as a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Robinson*, 271 Neb. 698, 710, 715 N.W.2d 531, 546 (2006); *State v. Williams,* 224 Neb. 114, 396 N.W.2d 114 (1986). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Robinson, supra*; *State v. Williams, supra*.

Nebraska precedent indicates that a defendant asserting an alibi defense bears a heavy evidentiary burden. *State v. Newman*, 310 Neb. 463, 966 N.W.2d 860 (2021). To establish an alibi defense, a defendant must show (1) he or she was at a place other than where the crime was committed and (2) he or she was at such other place for such a length of time that it was impossible to have been at the place where and when the crime was committed. *Id*.

Here, the jury was instructed regarding three counts of first degree sexual assault of a child, two counts of third degree sexual assault of a child, and three counts of child abuse. Each of these offenses were charged during a timeframe ranging from slightly more than one month to approximately one year. The first degree sexual assault of a child and child abuse timeframes alleged the offenses occurred from: January 2013 through January 2014; January 2014 through January 2015; and January 2015 through February 2015. The third degree sexual assault of a child timeframes alleged those offenses occurred from January 2013 through January 2014 and from January 2014 through January 2015. Lierman's allegation contained in his amended motion for postconviction relief that the driving logs "*would have been helpful* in supporting an alibi *for some of the dates*" does not encompass the entirety of the timeframes alleged regarding the commission of the offenses charged as necessary for an alibi defense. Accordingly, we find the record sufficiently refutes Lierman's claim that he was prejudiced by his trial counsel's failure to utilize

his driving logs and the district court did not err in denying this claim without an evidentiary hearing.

## CONCLUSION

Having considered and rejected Lierman's assigned errors, we affirm the district court denial of his amended motion for postconviction relief without an evidentiary hearing.

AFFIRMED.