IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HOOD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

EDWARD E. HOOD, APPELLANT.

Filed July 11, 2023.    No. A-22-716.

Appeal from the District Court for Garden County: DEREK C. WEIMER, Judge. Affirmed.

Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz, Conway & Dahlquist, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

PIRTLE, Chief Judge.

## I. INTRODUCTION

Edward E. Hood appeals from the order of the Garden County District Court denying his motion for postconviction relief without holding an evidentiary hearing. Based on the reasons that follow, we affirm.

## II. BACKGROUND

A jury convicted Hood of motor vehicle homicide, manslaughter, and driving under the influence of alcohol causing serious bodily injury, and the court later found Hood guilty of refusal to submit to a preliminary breath test. After the district court received evidence of Hood's two prior DUI convictions from Florida and New Mexico, it sentenced Hood to serve consecutive terms of 49 to 50 years for motor vehicle homicide, 19 to 20 years for manslaughter, and 5 years for driving under the influence of alcohol causing serious bodily injury. The court also ordered Hood

- 1 -

to pay a $100 fine for refusal to submit to a preliminary breath test and revoked his operator's license for a period of 15 years.

The evidence at trial generally showed as follows:

In December 2013, a two-vehicle, head-on collision occurred on U.S. Highway 26 in Garden County near Oshkosh, Nebraska. Hood was driving one of the vehicles; the driver of the other vehicle died at the scene, and the passenger of that vehicle survived after being in a coma for 9 days and sustaining extensive injuries.

After the accident, an off-duty Nebraska State Patrol trooper who came upon the accident asked Hood what happened and Hood said that just prior to the accident, he was looking out the window at a large flock of birds and when he looked back at the road, he suddenly observed a car in front of him. A trained emergency medical technician and volunteer firefighter who attended to Hood later testified he smelled a "[v]ery strong" odor of alcohol coming from Hood.

Garden County Deputy Sheriff Dwight Abbott helped Hood into the front seat of Abbott's cruiser and drove Hood to a local hospital. Abbott did not arrest or restrain Hood at that time. Abbott testified that during the drive, he smelled alcohol coming from Hood and noticed Hood's speech was slow and his eyes were bloodshot. Hood told Abbott that the accident happened "real fast" after he "looked out the window and saw the birds."

Meanwhile, officers at the scene continued to investigate the accident. There was evidence that Hood's vehicle had swerved across the oncoming lane of traffic and drove off that side of the roadway for about 60 feet, then crossed all the way back through his lane and past the shoulder line, and then made a heavy overcorrection and turned back across his lane and entered the oncoming lane of traffic. The victim who was driving pulled onto the shoulder to attempt to evade Hood, but Hood's vehicle was traveling "completely sideways" when its front passenger side struck the front driver's side wheel of the other vehicle. There was no indication that Hood ever applied the brakes.

Garden County Chief Deputy Sheriff Randy Ross testified that he opened Hood's vehicle and smelled a sweet, alcoholic odor. Ross located a bottle of brandy, which was two-thirds full, in a bag behind the center console. Ross relayed this information to Abbott, and Abbott questioned Hood about the accident while they were at the hospital.

Abbott asked Hood if he had been drinking. Hood replied that "he drank four beers last night" and said that "last night was a hard night." Abbott asked Hood to take a preliminary breath test, and after Hood refused, Abbott placed Hood under arrest for driving under the influence. Abbott read Hood the "Post-Arrest Chemical Test Advisement Form" and then asked Hood to submit to a blood test. Hood refused, stating he was a recovering heroin addict and "doesn't do needles."

Hood was then turned over to medical personnel. Tracy Ray, a physician assistant at the hospital, examined and treated Hood. Ray was initially at the accident scene, but then went to the hospital in order to treat those injured in the accident. Ray testified that Hood had bloodshot eyes, slurred speech, and alcohol on his breath. See *State v. Hood*, 301 Neb. 207, 917 N.W.2d 880 (2018).

With the assistance of new counsel, Hood filed a direct appeal arguing, in part, that the performance of his trial counsel was deficient and unfairly prejudiced his right to a fair trial. Specifically, he argued that his trial counsel should have pursued a defense based on the theory

that Hood had diminished mental capacity and in support, claimed that there was evidence he was in a state of confusion at the scene and after the accident.

We affirmed Hood's convictions and sentences concluding that the record affirmatively showed that Hood's mental capacity was not a factor in the collision, and refuted the allegations that the performance of trial counsel was deficient. See *State v. Hood, supra*. We also found that Hood's generalized allegations of deficient performance were insufficiently raised. *Id.*

Hood filed a verified motion for postconviction relief alleging claims of ineffective assistance of trial counsel and appellate counsel. First, he alleged that trial counsel's advice regarding Hood testifying in his own defense was unreasonable. Second, Hood alleged that trial counsel failed to consult with a medical expert concerning the symptoms Hood displayed immediately following the accident. Hood claimed his behavior could have been the result of a diabetic episode. Third, Hood alleged that trial counsel failed to observe his inability to assist in his own defense at the time of trial because Hood had recently started taking "Lorazepam" medication after being off it for 3 years, and trial counsel should have asked to have his competence to stand trial determined. He further claimed appellate counsel was ineffective by failing to raise ineffective assistance of trial counsel regarding the above three issues on direct appeal. His motion contained a fourth claim of ineffective assistance of trial counsel and appellate counsel which is not raised in the appeal before us now.

The court held a hearing on Hood's postconviction motion, during which it took judicial notice of the records and filings from the case, including trial proceedings, and took the matter under advisement. It subsequently found that each of Hood's claims contained insufficient allegations and/or were affirmatively refuted by the record. As such, the court concluded an evidentiary hearing was not warranted and it denied Hood's postconviction motion.

## III. ASSIGNMENT OF ERROR

Restated, Hood assigns that the district court erred in denying his motion for postconviction relief without an evidentiary hearing.

## IV. STANDARD OF REVIEW

When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court determines de novo whether the petitioner has alleged facts that would support the claim and, if so, whether the files and records affirmatively show that he or she is entitled to no relief. *State v. Jennings*, 312 Neb. 1020, 982 N.W.2d 216 (2022).

## V. ANALYSIS

### 1. General Postconviction Law

Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *Id.* The district court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains

factual allegations which, if proved, constitute an infringement of the defendant's rights under the state or federal constitution. *Id.*

However, the allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *Id.* An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Hood assigns that the district court erred by denying his motion for postconviction relief without conducting an evidentiary hearing. He claims he presented sufficient factual allegations on three claims of ineffective assistance of trial counsel and appellate counsel such that he was entitled to an evidentiary hearing.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Lessley, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Lessley, supra*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.* The likelihood of a different result must be substantial, not just conceivable. *Id.* The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *Id.*

In his brief on appeal, Hood alleges that trial counsel was ineffective in (1) advising him not to testify, (2) failing to consult a medical expert, and (3) failing to have him evaluated for competency. He also contends that his appellate counsel was ineffective by failing to raise these claims on direct appeal. Because Hood's claims of ineffective assistance of trial counsel were not raised on direct appeal, they are procedurally barred.

A motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred when (1) the defendant was represented by a different attorney on direct appeal than at trial, (2) an ineffective assistance of trial counsel claim was not brought on direct appeal, and (3) the alleged deficiencies in trial counsel's performance were known to the defendant or apparent from the record. *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018). Hood was represented by different counsel during his direct appeal than at trial. The ineffective assistance of trial counsel claims he now raises were not brought on direct appeal and were either known to Hood or apparent from the record. Therefore, he is precluded from raising these issues of ineffective assistance of trial counsel.

However, claims of ineffective assistance of appellate counsel may be raised for the first time on postconviction review. *Id.* As stated above, Hood argues that his appellate counsel was ineffective in failing to raise each claim of ineffectiveness of trial counsel on direct appeal. Accordingly, we assess Hood's alleged ineffective assistance of trial counsel claims on that basis.

When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the *Strickland* test. *State v. Cullen*, 311 Neb. 383, 972 N.W.2d 391 (2022). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. *Id.* Much like claims of ineffective assistance of trial counsel, the defendant must show that but for appellate counsel's failure to raise the claim, there is a reasonable probability that the outcome would have been different. *Id.*

(a) Advice Regarding Right to Testify

Hood first argues that he was entitled to an evidentiary hearing on his claim that his trial counsel was ineffective in advising Hood not to testify at trial. He claims that had he testified, his testimony would have supported an alternative explanation for the cause of the accident that did not involve alcohol consumption.

A defendant has a fundamental constitutional right to testify, and the right to testify is personal to the defendant and cannot be waived by defense counsel's acting alone. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). Defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make. *Id.* Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance of counsel in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable. *Id.* In a postconviction action, when a defendant raises a claim of ineffective assistance of trial counsel related to counsel's failure with regard to advising the defendant on his or her right to testify, we have subjected the claim to the *Strickland* standard and required the defendant to show how trial counsel's alleged deficient performance prejudiced the defense. *Id.*

In his postconviction motion, Hood does not claim trial counsel interfered with his freedom to decide to testify. He only claims trial counsel's advice to waive the right was unreasonable. Hood does not allege facts to support his claim. His motion provides no detail regarding how counsel deficiently advised him or any details about any discussions that took place between them. See *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018). Accordingly, Hood failed to allege sufficient facts that, if proved, would show trial counsel's performance was ineffective with respect to Hood's right to testify. See *State v. Lessley, supra*; *State v. Golyar, supra.* Because the allegations regarding trial counsel's performance are insufficient, the claim of ineffective assistance of appellate counsel also fails. The district court did not err in denying Hood an evidentiary hearing on this claim.

## (b) Medical Expert

Hood next argues that he was entitled to an evidentiary hearing on his claim that his trial counsel was ineffective in failing to consult with a medical expert regarding symptoms Hood displayed immediately following the accident, and that his appellate counsel was ineffective for not raising it on direct appeal. In his postconviction motion, Hood stated he discovered "post-trial" that he was diabetic and that "the condition had existed for some time." He alleged that his actions and statements after the accident, as well as the accident itself, could have been explained by Hood experiencing a diabetic episode. He suggests that had trial counsel consulted with a medical expert and presented this evidence at trial, there is a reasonable probability the outcome of trial would have been different in that there was a medical explanation for the accident, rather than it being attributed to Hood's intoxication.

Hood indicates he did not know he was diabetic at the time of the accident or at the time of trial. Yet he claims trial counsel should have consulted a medical expert because there was evidence he was confused and had delayed cognitive responses following the accident. He offers no factual basis to show trial counsel knew or had any reason to believe that his symptoms were from a medical condition such as diabetes, or any reason to consult a medical expert based on Hood's behavior after the accident. He does not allege that his behavior after the accident was characteristic of a diabetic episode and/or why counsel should have recognized that behavior. As the district court stated, Hood alleges that trial counsel should have inquired of a medical expert to discover Hood was diabetic but offers no factual basis upon which trial counsel should have known to engage such an expert for such a determination. Absent specific allegations, a motion for postconviction relief effectively becomes a discovery motion to determine whether evidence favorable to a defendant's position actually exists, which is an improperly pled motion and is subject to dismissal without an evidentiary hearing. See *State v. Cullen*, 311 Neb. 383, 972 N.W.2d 391 (2022).

We conclude that Hood's claim that trial counsel was ineffective in failing to consult a medical expert is insufficiently raised and his claim of ineffective assistance of appellate counsel also fails. The district court did not err in denying this claim without an evidentiary hearing.

## (c) Lack of Competence

Lastly, Hood argues that he was entitled to an evidentiary hearing on his claim that his trial counsel was ineffective in failing to have him evaluated for competency, and had counsel done so Hood would have been found incompetent to stand trial. He further claims appellate counsel was ineffective for not raising this claim on direct appeal. In his postconviction motion, Hood claims that he was unable to assist in his own defense at the time of trial because he had recently started taking a medication called "Lorazepam." He alleged that as a result of the medication, he was unable to focus on the evidence at trial and felt "out of it" during the entire trial..

A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense. *State v. Hessler*, 295 Neb. 70, 886 N.W.2d 280 (2016).

We conclude that Hood's claim of incompetence is refuted by the record. Neb. Rev. Stat. § 29-1823 (Cum. Supp. 2020) provides that if any time prior to or during trial it appears the

defendant has become mentally incompetent to stand trial, such disability may be called to the attention of the court by the prosecutor, the defendant, any person for the defendant, or the court itself. The "trigger" for a competency hearing under this statute is as follows: "If at any time while criminal proceedings are pending, facts are brought to the attention of the court, either from its own observation or from suggestion of counsel, which raise a doubt as to the sanity of the defendant, the question should be settled before further steps are taken." *State v. Saufley*, 29 Neb. App. 592, 604, 956 N.W.2d 726, 737 (2021).

The district court, the prosecutor, and Hood's trial counsel all observed Hood throughout the trial and none of them raised doubt about Hood's competence. The district court engaged in a colloquy with Hood during the trial about Hood waiving his right to testify as well as about waiving sequestration of the jury. Hood was responsive and appropriate in his answers and appeared to understand what he was being told by the court.

Because the record shows that Hood would not have been found incompetent, his trial counsel was not ineffective for failing to have him evaluated for competency, and his appellate counsel was not ineffective for failing to raise the claim on direct appeal. This claim was properly denied without an evidentiary hearing.

## VI. CONCLUSION

For the reasons stated above, we conclude that the district court did not err when it denied Hood's postconviction claims without an evidentiary hearing. We therefore affirm the district court's order.

AFFIRMED.